# Philadelphia Rapid Transit Company, Appellant, *v.* The Public Service Commission.

*Public Service Company Law — Public Service Commission — Street railway companies—Order of Public Service Commission— Order based on reports of experts not offered in evidence—Right of cross-examination.*

An order of the Public Service Commission is not reasonable or in conformity with law, if based on reports not offered in evidence made by experts who were not subject to cross-examination.

In hearings before the commission all parties must be fully apprised of the evidence submitted, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal according to well-understood rules. In no other way can a party maintain its rights, or make its defense, or test the sufficiency of the facts to support the finding.

Argued March 16, 1922.    Appeal, No. 31, Oct. T., 1922, by Philadelphia Rapid Transit Company, from order of the Public Service Commission in the case of Cliveden Improvement Association and Germantown and Chestnut Hill Improvement Association v. Philadelphia Rapid Transit Company.    Complaint Docket Nos. 3788 and 4046, 1920.    Before ORLADY, P. J., PORTER, HENDERSON, KELLER and LINN, JJ.    Reversed.

Complaint before the Public Service Commission against the rerouting of street car line of Philadelphia Rapid Transit Company serving Germantown and Chestnut Hill.

The commission made the following order.    Respondent appealed.

These matters being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaints and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the commission having on the date hereof made and filed of record a report containing its findings of fact

and conclusions thereon, which said report is hereby approved and made part hereof:

Now, to wit, November 15, 1921, it is ordered: That the complaints in these cases to the extent hereinafter indicated, be and the same are hereby sustained.

It is further ordered: That the Philadelphia Rapid Transit Company, respondent, change the time schedule for the running and operation of its cars on the City line branch so that the ten-minute headway shall begin at 6:30 a. m., instead of 7:20 a. m., and continue until 6:30 p. m., instead of 6 p. m.

It is further ordered: That the Philadelphia Rapid Transit Company respondent, restore old route No. 19 and resume the operation of its cars on the same streets as were traversed prior to November 1, 1920, and continue service on the Luzerne Street Loop at present supplied by new route No. 19 and formerly supplied by route No. 6; said operations to be maintained for a trial period of six months under the following conditions:

1. Operate daily at least the same number of car miles on route No. 19, on route No. 23, and on the Luzerne Street Loop as were operated during the month of June, 1921, so that substantially the same number of car miles with the large green cars, or their equal, shall be maintained as was recorded for the month of June, 1921.

2. Said respondent to file of record with the commission the number of car miles operated by routes, number of cars used, and number of passengers carried daily, during the month of June, 1921, and during each month of the said six months' period of trial, said six months' trial period to begin on or before December 11, 1921.

It is further ordered: That the Philadelphia Rapid Transit Company, respondent, at the expiration of the said six months' trial period, submit to the commission a report of the trial, accompanied by such discussion, conclusions and recommendations as shall appear to said respondent to be necessary to afford its patrons, em-

ployees and the public along routes Nos. 19 and 23 just, reasonably adequate and practically sufficient service.

Jurisdiction is hereby retained for the purpose of making such further order as the circumstances may warrant in the light of the said report.

*Errors assigned,* among others, were the order of the commission and that the order of the commission was materially affected by incompetent evidence.

*Frederic L. Ballard,* of *Ballard, Spahr, Andrews and Madeira,* and with him *C. J. Joyce,* for appellant.

*Harold S. Shertz,* and with him *Joseph F. Lewis,* for intervening appellees.

OPINION BY LINN, J., April 17, 1922:

Complaint was made to the commission that certain rerouting of cars by appellant furnished inadequate service. The commission sustained the complaint in part, and this appeal by the transit company followed.

The appeal was by petition pursuant to article VI, section 17 as amended in 1915, P. L. 779. Section 18 requires the commission to certify to this court "the record of the said proceedings; which record shall include the evidence taken therein......" (1917, P. L. 808). Section 23 provides "and the notes of testimony taken before the commission or any of the members thereof, duly certified under its seal, and filed as aforesaid as a part of the record, shall be considered by the court as the testimony in the case." Section 24 provides that if this court "upon the record, find that the order appealed from is unreasonable......or is otherwise not in conformity with law, it may......remand the record to the commission with directions to reconsider the matter and make such order as shall be reasonable and in conformity with law."

It is alleged that the commission received the reports or opinions of two expert witnesses on the issues in-

volved without permitting cross-examination by appellant. While the certified record shows that such evidence was taken, the reports are not in the record, and in its answer to the petition for appeal, the commission denies that its conclusions were predicated upon the reports. We do not doubt the accuracy of that answer, but in such circumstances, it is clear that merely requiring the record now before us to be supplemented by the addition of the omitted evidence, will not cure the error if the record supports the allegation that the evidence was so received, for who can tell what the cross-examination would have elicited or what countervailing proof might have been received in consequence?

The learned counsel for the commission informed us at bar that the commission referred the reports to its engineering bureau which may or may not have read them, in performing its duties to the commission in this case.

The record shows that after the testimony had been closed, briefs were submitted and the case was argued before the commission. Thereafter the commissioner who had taken the testimony, called a meeting of counsel for the parties to the proceedings, when witnesses were sworn and additional evidence was taken. Though the City of Philadelphia was not a party to the proceedings, an assistant city solicitor representing the Transit Department of the City of Philadelphia was present. The commissioner suggested that the assistant city solicitor obtain a representative of the City Transit Department to join with an expert representing complainants, and one representing appellant, "to study this record and go over this routing and make a report. If they cannot make a unanimous report, let them make individual reports,......Then I will take up those reports with our engineer, Mr. Jones, and go over them, and then I will make an order......" Later, he said, "That great department of City Transit must have someone familiar with routing......I want a man independent

of our commission.  Our own engineers I want to keep out of it until I come to make the order, and then I want them.  I thought possibly I could have studies from the standpoint of the City, by a city engineer......"

The record advises that the three experts failed to agree, whereupon separate and independent reports were prepared by two of them, one, by the engineer for complainants, and the other, by the engineer employed in the department of city transit; these reports made various recommendations and at least one of them was based in part upon investigation by the city transit department.

The record shows the following took place when the assistant city solicitor was asked by the commissioner for the report of the city engineer:

The Assistant City Solicitor: "As I understood it, you asked me to provide some one to help you in the formulation of your decree in this matter.

Commissioner: Not exactly that.  Not in the formulation of my decree, but simply to give me additional light, so that when I came to write a decree I would have the benefit of the thought of the engineers of the City of Philadelphia.

Mr. Rosenbaum: You see, I do not want our man to be put in the position of being an additional expert witness in the case, who was not subject to cross-examination.  That is a thing that ought to be avoided.

Commissioner: No.  You are quite right about that.  But I asked you for this report, and if I want to make it a part of the record then I can subpœna the engineers to come here and submit them to cross-examination by the counsel for the respondent company.  If I do not want to make the report a part of the record, therefore it will not be necessary to have any cross-examination.

"Mr. Rosenbaum:......but I would like to make it plain that our Department of Transit, and our engineers, do not desire and do not feel that they have any power

to be put in the position of supervising the details of operation of the Philadelphia Rapid Transit Company.

"Commissioner: No.   We do not want to have any misunderstanding about that.   I agree with you that the Department of City Transit of the City of Philadelphia has nothing whatever to do with that, but I can call on their engineers, as I would call on any engineer, to give me information that would guide me in determining the particular matter.   I do not mean to say that I would accept his report as verity, or that it would be conclusive with me, but it would be helpful in getting some independent man to give me his view on this subject.   You may be sure that it will not be treated as a supervision by the Department of City Transit, or a determination of the question by the Department of City Transit at all, because, of course, I would not permit that as a commissioner.   The commission hasn't any right to do that.   But they have a right to give me information, just as I might call on them to give me information from their statistical department.

"Mr. Rosenbaum:......but another thing that I should like to make perfectly clear is that we are not attempting to create here a precedent, by which we are to be made available for service in rendering decisions in cases such as the route 19 or the Sixty-ninth Street Terminal case.

"Commissioner: That will be so understood.

"Mr. Rosenbaum: With that understanding, if your Honor please, I take great pleasure in presenting to you the result of the study made by our engineer."    (Mr. Conroy.)

 * * * * * * * * *

"Mr. Ballard: Mr. Commissioner, do we understand from Mr. Rosenbaum that this comes from Mr. Conroy as an individual whom your Honor has called on to advise you, or give you additional data, and not from the City of Philadelphia or the Department of City Transit or the Director of Transit?

"Commissioner: That is correct.

"Mr. Ballard: And, furthermore, with this under-standing that if it is to be considered at all by the commission it will be made part of the record and subject to cross-examination? Is that right?

"Mr. Rosenbaum: I quite concede that the company has the right to object to any expert testimony of this sort, which is not subject to cross-examination, and I made that point when I first spoke about this thing, but I would desire, if possible, to avoid the necessity for that, because we do not want to appear in cases of this sort in apparent antagonism to the company.

"Commissioner: Suppose we cross that bridge when we come to it. I do not think we need worry about that."

A report made by complainants' engineer was then also received, whereupon the commissioner stated he would have copies of the reports made for each party, appellant, up to that time, having seen neither report.

In the light of the purposes for which the evidence of the two engineers was desired, as declared by the commissioner, taken with the statement at bar made by the learned counsel for the commission that the reports were referred to its bureau of engineering, as we have stated, we are driven to the conclusion that the commission erred fundamentally in so receiving the evidence without cross-examination by appellant. In Pennsylvania R. R. Co. v. Pub. Ser. Comm., 69 Pa. Superior Ct. 404, 411, the subject was before this court, and in an opinion by the President Judge, we said: "It appears by the record, that proof was received by the commission in the form of engineer's reports that were not submitted to the railroad company, though they may have been very informing and material in determining the conclusion reached. This testimony, like all other substantive proof, should have been open to the inspection and reply by the railroad company. The right to a full hearing and scrutiny of estimates and reports, is required by all of the cases to which our attention has been called." From

the cases then relied on, we now quote the following, which, though applied to the interstate commerce act, is, in a general sense applicable to the Public Service Company Law as well as to the contention made on behalf of the commission in this case: "The government further insists that the Commerce Act (36 Stat. 743) requires the commission to obtain information necessary to enable it to perform the duties and carry out the objects for which it was created, and having been given legislative power to make rates it can act, as could Congress, on such information, and therefore its findings must be presumed to have been supported by such information, even though not formally proved at the hearing. But such a construction would nullify the right to a hearing,—for manifestly there is no hearing when the party does not know what evidence is offered or considered and is not given an opportunity to test, explain, or refute. The information gathered under the provisions of section 12 may be used as basis for instituting prosecutions for violations of the law, and for many other purposes, but is not available, as such, in cases where the party is entitled to a hearing. The commission is an administrative body and even where it acts in a quasi-judicial capacity, is not limited by the strict rules, as to the admissibility of evidence, which prevail in suits between private parties: Int. Com. Comm. v. Baird, 194 U. S. 25. But the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the commissioners cannot act upon their own information as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights, or make its defense. In no other way can it test the sufficiency of the facts to support the

finding; for otherwise even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the commission had before it extraneous, unknown but presumptively sufficient information to support the finding: United States v. Baltimore & Ohio S. W. R. R., 226 U. S. 14"; Int. Com. Comm. v. Louisville & Nashville R. R., 227 U. S. 88, 93.

The avowed purpose of the commissioner in receiving the evidence and its reference to the engineering department for report to the commission, make it impossible for us to consider the order reasonable and in conformity with law for the reasons indicated.

It is therefore unnecessary now to pass on the remaining assignments of error.

The order is reversed and the record is remanded to the commission with instructions to permit appellant to cross-examine Messrs. Lewis and Conroy, whose reports were received, and for such further reconsideration of the issues involved as may be required by law.