Latrobe Water Company, Appellant, *v.* Public Service Commission.

Argued May 7, 1936.

Before KELLER, P. J., CUNNING-HAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Paul H. Rhoads,* with him *John Fox Weiss,* of *Weiss & Rhoads,* for appellant.

*Samuel Graff Miller,* with him *John C. Kelley, Jr., Harry H. Frank* and *Richard J. Beamish,* for appellee.

OPINION BY CUNNINGHAM, J., July 10, 1936:

For many years the appellant has been supplying water in the borough of Latrobe and portions of the contiguous township of Derry, Westmoreland County. The mining town of Bradenville is located in that township a few miles east of Latrobe. Some of the residents of Bradenville have been supplied with water by appellant for more than forty years.

In August, 1931, three petitions for an extension of appellant's facilities to other portions of the village were filed with the commission. After various hearings and engineering conferences, the commission filed its report and entered its order, under date of February 21, 1933, directing appellant "to construct the necessary extension of its facilities" upon receipt "of applications filed in accordance with its current tariff rules for water service to properties abutting on the extension agreed upon in engineering conference on January 5, 1932, from which service respondent would receive in accordance with its tariff now on file a total revenue of not less than $1,392, including therein the seven fire hydrants upon said lines and any coal company houses formerly served by other means."

The water company's appeal to this court from that order was dismissed and the order affirmed in an opinion filed October 3, 1934, and reported in 115 Pa. Superior Ct. 66, 174 A. 615.

A description of the size and proposed location of the 8,400 feet of mains required for the extension, as agreed upon at the engineering conference, will be found in that opinion.

· For present purposes it is sufficient to say that the order then affirmed was supported by findings of the commission that the cost of the extension, based upon prices of labor and materials prevailing in March, 1932, would be $18,000. In this estimate the cost of pipe was assumed at $30 per ton and the labor rate at 25 cents per hour. Included in the contemplated revenue of not less than $1,392 was an item of $280 per annum from the township for seven fire hydrants.

By a supplemental order, dated November 20, 1934, the time for the completion of the work was extended by the commission, upon its own motion, to August 1, 1935.

The order out of which the present controversy arose was issued by the commission, also upon its own motion and without notice or hearing, under date of February 11, 1936.

After referring to the prior order of February 21, 1933, and its affirmance by this court, and to the order of November 20, 1934, extending the time for completion to August 1, 1935, the commission continued: "It now appears from information submitted to us that the requirements of our said order that prospective consumers make cash deposits and file applications for service from the proposed extension to assure a minimum annual revenue of $1,392 have been met and, in fact, somewhat exceeded, and that a further extension of time is necessary to permit the respondent to comply with our order; therefore,

"Now, to wit, February 11, 1936, It is ordered: That the time for completion of the work ordered to be done by Latrobe Water Company, in the construction of the extension here involved, be and is hereby further extended to August 1, 1936."

Promptly after service of this order upon it the company filed a lengthy petition praying the commission to "rescind its orders and terminate the proceeding, or grant a rehearing." The petition, exclusive of the attached exhibits, covers fourteen printed pages of the record. As indicated, its prayer is in the alternative— that the original order of February 21, 1933, and the supplemental order of November 20, 1934, fixing August 1, 1935, as the date of completion of the extension, be rescinded and the proceeding terminated, or, at least, that a rehearing be granted.

In support, more particularly, of the first prayer, the company avers in the third and fourth paragraphs:

"3. That your Honorable Commission, in fixing August 1, 1935, as the date for the completion of the work, necessarily contemplated that the applications required to produce $1,392 annual revenue would be filed a sufficient length of time prior to August 1, 1935, to permit your petitioner to undertake and complete the work by said date.

"4. That said orders of your Honorable Commission, dated February 21, 1933, and November 20, 1934, lapsed and became of no force and effect, and the entire proceeding terminated because at no time on or before August 1, 1935, did the prospective consumers file applications in accordance with your petitioner's tariff, sufficient to produce the annual, required revenue of $1,392."

More generally, it is averred that the recital in the order of February 11, 1936, to the effect that the requirements that sufficient prospective consumers make deposits and file applications for service to assure a

minimum annual revenue of $1,392 "have been met and, in fact, somewhat exceeded," is incorrect.

This allegation is supported by detailed averments relative to the applications received to the date of the petition which averments are to the effect that the annual revenue indicated by bona fide applications will not exceed $842. It is further averred that the township has not made any deposit for the fire hydrants, is financially unable to do so, and could not pay the annual bills for this service.

The next material averment of the petition is that, during the four years which have elapsed since the making of the estimate upon which the extension was ordered, "there has been a substantial increase in the cost of the materials and labor" required for the work. In detail it is stated that the labor rate would now be 39c per hour as against the former estimate of 25c; that the necessary amount of 8 inch pipe would now cost $4,548, as against the estimate of $3,495; that the increase in the cost of 6 inch pipe would be $739; and that the cost of hydrants, valves, fittings, etc., has increased 35%.

Additional facts and figures are set out in the petition as the basis for an averment than an annual income of $1,392 "will not nearly cover operating expenses and depreciation, to say nothing of allowable interest on the investment or profit."

In the ninth paragraph it is averred that engineering surveys made since the original hearings demonstrate that adequate service cannot be rendered through the proposed extension unless a booster pump and storage facilities are constructed at a cost of $14,250.

In brief, it is averred in the petition that the proposed extension, exclusive of the booster pump, will now cost $21,646, as against the original estimate of $18,000, and if the pump be included, $35,896.

Other allegations are to the effect that the coal in

the immediate vicinity of Bradenville is about worked out and that forty per cent. of the applicants for service are on "Federal Project work or relief."

An answer was filed by the original complainants in which it is asserted that bona fide applications sufficient in number to produce an annual revenue of $1,399 have been made. The increase in the present day cost of labor and materials over the original estimate, as set out in the petition, is not questioned in the answer, but it is averred that the delay in making the extension is attributable to the obstructive tactics of the water company.

The answer denies that a booster pump and storage facilities are essential to the rendition of adequate service.

In its reply to the answer the company, in effect, reiterated the averments of its petition.

The commission refused to grant the water company a hearing upon the matters alleged in the petition and denied in the answer, declined to permit its counsel to make an oral argument in support of their contentions, and under date of March 31, 1936, entered its order directing, "That the work ordered to be done by Latrobe Water Company, respondent, in the construction of the improvement heretofore ordered, be commenced on or before April 15, 1936."

The present appeal is from that order. Upon appellant's application we granted a supersedeas pending its disposition.

Subsequent to the affirmance of the original order by this court, the company, on December 13, 1934, filed a supplement to its tariff, requiring, inter alia, that deposits equivalent to one year's estimated water rent be made along with applications for extension of water service; hence the present controversy relates to deposits as well as applications.

In opposing the contention of appellant for a rescis-

sion of the orders, it is stated in the brief for the commission (p. 7) that its order, "setting August 1, 1935, as the completion date for the extension, closed with the words: 'unless said time be further extended by this commission' ", and reference is there made to page 220(a) of the record. That statement is not borne out by the order as printed at the designated page of the record. The original order of February 21, 1933, however, did contain a provision that the extension should be completed not later than October 1, 1933, "unless said time be extended by this commission."

One of the tests to which every order of the commission must be subjected, when attacked, is that it be "in conformity with law." Among other things, it must appear from the record that the order is supported by sufficient legally competent evidence. Here, the commission has stated that the basis for the challenged order is "information submitted to [it]" that the "requirements" of the original order of February 21, 1933, "have been met and, in fact, somewhat exceeded." Neither the source, the character, nor the extent, of the "information" is revealed.

Whether the conditions of the original order, with respect to the filing of applications and the making of deposits, had been complied with was a question of fact specifically and positively denied by appellant and affirmed by the complainants. There is only one way to determine an issue of that kind in conformity with law—by competent evidence.

The action of the commission in refusing a hearing has deprived appellant of an opportunity to prove its allegations that sufficient bona fide deposits and applications have not been made and to cross-examine the complainants who assert the contrary.

We gather from the briefs that the commission probably referred to the interpretation which it placed upon certain correspondence passing between the superin-

tendent of appellant and a member of the commission's engineering bureau. Copies of the letters are printed as exhibits to the commission's brief, but no part of the correspondence was ever placed upon the record in any way. Appellant takes issue, in its brief, with the interpretation placed upon the letters by the commission. A perusal of the correspondence demonstrates there is ample room for different interpretations, and our consideration of this appeal must be restricted to the matters appearing upon the record as certified to us.

It is well established, under all the authorities, that even accurate information which may be in the possession of the commission but not put in evidence will not support an order; all parties must be fully apprised of the evidence upon which the commission proposes to act and must be afforded an opportunity to cross-examine opposing witnesses: *Phila. Rapid Transit Co. v. Pub. Ser. Com.,* 78 Pa. Superior Ct. 593, 600.

Aside from the question whether the commission should have treated August 1, 1935, as the deadline for filing applications, there were other issues of fact involved, relating to the alleged increase in costs and the necessity for a booster pump, which could not properly be disposed of without evidence.

A quotation from the opinion of the Supreme Court of the United States in *Atchison T. & S. F. Ry. Co., v. U. S.,* 284 U. S. 248, is pertinent. There, it appeared that the Interstate Commerce Commission, after holding prolonged hearings, closed the record in September, 1928, and made an order in July, 1930, the effectiveness of which was delayed. On February 18, 1931, the carriers petitioned the commission for a rehearing because conditions had changed since the hearings had closed. The commission refused to grant a rehearing. In an opinion by Mr. Chief Justice HUGHES, it was said (p. 262) : "In the instant proceeding, the hearing accorded related to conditions which had been radically

changed, and a hearing, suitably requested, which would have permitted the presentation of evidence relating to existing conditions, was denied. We think that this action was not within the permitted range of the commission's discretion, but was a denial of right. The order of the commission which was thus made effective, and the ensuing supplemental order, cannot be sustained."

In the absence of any evidence from which responsibility for the long delay in this case might be determined, or any of the other issues of fact here involved disposed of, we cannot intelligently consider the merits. We are convinced, however, that the making by the commission, without notice or hearing, of the order extending the date for completion to August 1, 1936, and of the order refusing a hearing upon the issues of fact raised by the petition and answer, amounted, for the reasons stated, to an unreasonable and arbitrary exercise of its powers and that these orders were not made in conformity with law.

The appeal is sustained and the orders of February 11th and March 31, 1936, are reversed with a procedendo.