## Com. *v.* Ziegler Dairy Company, Appellant.

Argued September 26, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Willis F. Daniels,* with him *Luther H. Heist, Rose Daniels* and *Harold W. Swope,* for appellant.

*Frank E. Coho,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, *G. S. Parnell,* Special Deputy Attorney General, and *Charles J. Ware,* Assistant Deputy Attorney General, for appellee.

OPINION BY KELLER, P. J., March 2, 1940:

Pursuant to section 9 of the Milk Control Board Law of April 30, 1935, P. L. 96, re-enacting and amending the Act of January 2, 1934, P. L. 174, a complaint was filed on January 4, 1937 before an alderman of the City of Reading by an investigator of the Pennsylvania Milk Control Board alleging a violation by Ziegler Dairy Company, during the months of October and November,

1936, of section 3 of Official General Order No. 28, effective October 11, 1936, promulgated by virtue and authority vested in said board by section 18 of the Act of 1935, supra, in that it, Ziegler Dairy Company, did not pay producers of milk the minimum prices as prescribed in said order and section. A hearing was duly had and testimony taken. The alderman found the defendant guilty and sentenced it to pay a fine of $25 and costs.

On January 13, 1937 the defendant presented its petition to the court of quarter sessions praying for the allowance of an appeal from said summary conviction, which was granted by the court.

The grounds for appeal, set forth in the petition for its allowance, were: (1) The prosecution was not brought until January 4, 1937, which was after January 1, 1937, when General Order No. 28 was superseded by General Order No. 36 of the Milk Control Board. (2) The defendant was convicted on hearsay testimony and without the production of the best evidence. (3) The Act of Assembly of April 30, 1935, supra, is unconstitutional, "in that it compels the defendant to give evidence against itself, contrary to the Constitution of the State of Pennsylvania." (4) That an injustice has been done the defendant by the decision of the alderman, which, if permitted to stand, will compel it unjustly to pay money not owing by it under the Acts of Assembly.

Nothing was done to bring the case to a hearing until February 17, 1939. The explanation given at the argument was that the prosecution was awaiting the disposition of a similar case brought in Northampton County.

On February 17, 1939 the case was heard on appeal, de novo, by Judge SHANAMAN, of the Court of Quarter Sessions of Berks County, who after a full hearing, adjudged the defendant guilty and imposed the same sentence as had been imposed by the alderman. Defendant appealed to this court.

Between the hearing before the alderman and the hearing in the court of quarter sessions the Supreme

Court of the United States handed down its decision in the case of *Morgan v. United States,* 304 U. S. 1, and the grounds of defense presented in the court of quarter sessions were wholly altered from those relied on before the alderman, or those assigned as ground for appeal to the quarter sessions. The Commonwealth, however, effectually disposed of the latter, (1) by showing that Order No. 36, which went into effect on January 1, 1937, contained a saving clause, providing that milk delivered prior to its effective date, should be paid for at the price fixed by, and be governed by, the official general order in effect on the date of such deliveries; (2) the hearing before the court of quarter sessions was de novo and the evidence produced was not hearsay; (3) the Act of 1935, supra, did not compel the defendant to give evidence against itself; no constitutional right of the defendant was violated by testimony of the Commonwealth's investigator as to an examination of defendant's books made as authorized by the Act, with its knowledge and permission; (4) the constitutionality of the Milk Control Acts and their reasonable regulation of prices to be paid producers by dealers had been established in *Rohrer v. Milk Control Board,* 322 Pa. 257, 186 A. 336, and subsequent decisions.

The grounds now presented to us on appeal by the defendant are: (1) That General Order No. 28 was *void* because the Milk Control Board in adopting and promulgating it relied in part on information in its possession, but not placed in the record of the hearing. (2) That General Order No. 28 was *void* because it was promulgated as a *final* order following a hearing or hearings, without first issuing a *tentative* order, supported by findings of fact and conclusions of law to which parties affected could file exceptions and argue the same before the Board. Connected with these was a third contention, based on the assumption that Order No. 28 was a *void* order, viz., that it was such a void order that the defendant could raise it as a defense in

the summary proceeding instituted for its violation. In our opinion there is no merit in any of them. We will consider them in the order above mentioned.

(1) Section 18, subsection A, of the Act of 1935, supra, authorized the board, after a hearing in which all interested parties should be given full opportunity to be heard, to ascertain reasonable milk marketing areas within the State, describing their territorial extent and designating them by numbers, and to ascertain and maintain such prices for milk in the respective milk marketing areas as would be most beneficial to the public interest and would best protect the milk industry in the Commonwealth and insure a sufficient quantity of pure and wholesome milk. The board was directed to base all prices upon the conditions affecting the milk industry in each marketing area, including the amount necessary to yield a reasonable return to the producer and to the milk dealer. Sub-section B of said section directed the board, after making such examination or investigation, to fix, by official order, subject to the approval of the Governor, the minimum wholesale and retail prices to be charged for milk sold within any milk marketing area, and directed further, "The board shall file at its office, with each order issued, a statement in writing of the findings of fact in support of, or the reasons for, such orders."

The section further authorized the adoption of regulations specifying and fixing various grades of milk, and, when so specified, directed the board to fix the minimum price applicable in each of said classes.

Sub-section D of said section directed the board with the approval of the Governor to fix by official order the *minimum prices to be paid by milk dealers* to producers and others for milk.

Section 6 of the Act gave the board power to issue subpoenas requiring the attendance of, or the production of pertinent books and papers by, milk dealers or their employees, producers or their employees, or others

whom the board believed to have information; and section 8 gave the board, and any employee designated for the purpose, access at all reasonable hours to all places where milk is being produced, stored, bottled, etc. ,or otherwise handled; and power to inspect all books, papers, records, etc. in any place within the Commonwealth for the purpose of ascertaining facts to enable the board to administer the Act.

Section 7 authorized the board to adopt and enforce all rules, regulations and orders necessary or desirable to carry out the provisions of the act and not inconsistent with law, and directed how such rules, regulations and orders should be promulgated and made public and the public notice to be given them by posting, mailing, etc.

The Act contained many other provisions not necessary to be referred to here.

In connection with the promulgation of General Order No. 28 the Milk Control Board filed a statement giving findings of fact in support of, and reasons for, such order, covering twenty printed pages of brief or paper book size. The preliminary statement was as follows:

"The Milk Control Board, prior to promulgating Official General Order No. 28, held hearings in Harrisburg, Philadelphia, Scranton, Pottsville, Easton, Johnstown, and Erie, and on petition of certain dealers, producers, and consumers, held extended hearings, by question-and-answer and cross-examination method, prior to promulgating Official General Order No. 28, and on petition of certain dealers and certain producers and producers' organizations, held extended hearings, by question-and-answer and cross-examination method, prior to promulgating Official General Order No. 28. The facts and reasons set forth below are taken from the evidence, exhibits and briefs of these hearings, except in some instances where the conditions are of such

general knowledge as would warrant the Board to take official notice of the existence of these conditions."

After dividing the state into ten milk marketing areas,—of which Berks County was placed in No. 6— and dividing milk into classes for the purpose of arriving at a proper price structure, and discussing the necessity therefor, the board took up and discussed the PRICES TO BE PAID THE PRODUCER, saying inter alia:

"Without referring to the great volume of testimony received from individual producers throughout the state in complete detail, the Board refers to the general facts produced by such testimony. All testimony received on production and costs recited the following facts: An increase of feed stuffs due to the drought, a short hay crop, which was almost universal throughout the state, and a tendency in most areas for labor costs to be increased. After a careful audit of the figures substantiating the facts above stated, we find that the average cost of production throughout the state has increased approximately twenty-five per cent. The Board desires to express its gratitude to the numerous producer witnesses who appeared at the various hearings and gave testimony regarding production costs. Especially do we wish to thank Professor A. A. Borland, Chief of the Department of Dairy Husbandry, and Professor Monroe J. Armes, of the Agriculture Economics Department, both of the Pennsylvania State College. The statistics and minute detail of production costs proved invaluable to the Board in arriving at the prices set forth below. After allowing for the increase of twenty-five per cent over the production costs of 1935, which the Board finds to be $1.86 per hundredweight for milk containing 3.5 per cent butterfat, we find the cost to be $2.32 per hundredweight, which is the present price for producing one hundred pounds of fluid milk containing 3.5 per cent butterfat. The real problem for this Board is to secure for the farmer a price approximating this cost of production. The Board wishes to reiterate that this

figure of $2.32 is a composite figure for the production of all milk, as arrived at after hours of work by the auditors of this Department and one which the board feels to be fair and just after due consideration of the facts above set forth. Having determined the composite cost to the farmer, it is necessary to establish a price structure which returns that cost to him."

The board, accordingly, in General Order No. 28, by section 3, fixed the following minimum prices, per hundred pounds of milk, to be paid producers for Class I milk sold to milk dealers, if resold in, Milk Marketing Areas one, three, four, five, six, seven, eight, nine and ten, viz.: "$2.88 if resold in Areas one, four, five and nine; $2.75 if resold in Areas three, six, seven and eight; and $2.38 if resold in Area ten."

It was proved that the defendant had paid producers during October and November 1936 for class I milk they had sold it, which had been resold by it in Area six, $2.60 per hundred pounds, instead of $2.75 fixed as the minimum price in said order for class I milk purchased from producers and resold in Area six.

It was shown that the defendant had knowledge that these hearings were being held. Audits had been made, pursuant to a meeting between the board auditors and counsel representing the milk dealers of that area, of certain dairy establishments which were regarded as typical, and defendant's establishment was one of them.

The statement issued by the board as above showed that some consideration had been given by it to these audits, and at the defendants' hearing before Judge SHANAMAN it was stipulated by counsel for the board that no employee of the board took the witness stand at the time of the last hearing [at Easton] held just preliminary to the issuance of Order No. 28, and that in the statement of findings of fact concerning Order No. 28 it was stated that the board relied in part upon audits conducted by the board. Such stipulation was scarcely necessary, for any dealer who read the state-

ment of findings of fact in support of, or reasons for, the order, could not fail to have notice that the board had done so.

Notwithstanding that notice of reference to such audits appeared in the statement of the board, this defendant took no appeal from said order, as it was empowered to do by section 14 of the Act, which authorized "any person aggrieved by an order of the board fixing the price at, or the terms upon, which milk may be bought or sold, or any other general rule, regulation or order of the board" to appeal therefrom to the Court of Common Pleas of Dauphin County.

It now contends that, notwithstanding its failure to appeal, the order was absolutely *void,* because the board in arriving at its findings of fact made some use of information contained in certain audits which were not spread out at length on the records of the hearing, nor opportunity given dealers to cross-examine the auditors.

As supporting this contention, its counsel refers to certain extracts from opinions of this court dealing with public service company appeals.

It is one thing to declare that an order based on the erroneous consideration by a board or commission of evidence not contained in the record will be set aside where a party affected thereby has appealed from the order in accordance with the provisions of the statute, and quite another thing to hold that such an order, though unappealed from, is null and void because of such erroneous consideration of evidence, and will not be enforced for any purpose. The authorities cited by the appellant support the former position; none of them sustains the latter.

Thus in *Penna. Railroad Co. v. Public Service Com.,* 69 Pa. Superior Ct. 404, 411; *Phila. Rapid Transit Co. v. Public Service Com.,* 78 Pa. Superior Ct. 593, 599, 600; *Latrobe Water Co. v. Public Service Com.,* 123 Pa. Superior Ct. 21, 27, 186 A. 294; and *Cage v. Public Serv-*

*ice Com.,* 125 Pa. Superior Ct. 330, 189 A. 896, relied on by appellant, appeals were taken to this court by the parties aggrieved by the orders complained of, in the manner prescribed by the amended Public Service Company Law, and the orders were set aside by this court because they were based in part upon reports, information, etc., which had not been offered in evidence. In *Penna. Railroad Co. v. Public Service Com.,* supra, we said: "It appears by the record, that proof was received by the commission in the form of engineers' reports that were not submitted to the railroad company, though they may have been very informing and material in determining the conclusion reached. This *testimony,* like all other substantive proof, should have been open to inspection and reply by the railroad company." In *Phila. Rapid Transit Co. v. Public Service Com.,* supra, Judge LINN, speaking for this court with respect to a report of complainant's engineers received by the commission but not put in the record, or the engineers who made it called for examination and cross-examination, said: "In the light of the purposes for which the evidence of the two engineers was desired, as declared by the commissioner, taken with the statement at bar made by the learned counsel for the commission that the reports were referred to its bureau of engineering, as we have stated, we are driven to the conclusion that the commission *erred fundamentally* in so receiving the evidence without cross-examination by appellant." (Italics supplied)

There is nothing in any of those cases, which would support the contention that the parties affected by those orders could have allowed them to become final and absolute, without taking the appeal provided by statute for the purpose of rectifying errors by the commission, and then on a proceeding instituted to enforce the penalty for their violation, have defended on the ground that the order was void because based in part on evidence not brought upon the record. While the term

'void' may have been loosely used in some of the cases it is evident that the action of the commission was erroneous or voidable rather than void, provided there was any substantial evidence in the record to support the order.

The case of *Byers v. Hempfield Twp.*, 226 Pa. 278, 75 A. 415, also cited by appellant, draws a similar distinction as to when equity may be resorted to to restrain the collection of a tax and when not. It was there held that equity has jurisdiction to restrain by injunction an attempt by supervisors of a township to enforce collection of a tax which they have no power to impose; but if the rate or assessment was irregular, or had been unfairly or improperly imposed, or the valuation was too high, or the acreage assessed to the owners was too great, or for any similar reason was illegal, and an opportunity to appeal had been afforded, the owner would be compelled to resort for relief to an appeal.

In *Ohio Bell Tel. Co. v. Public Utilities Com.*, 301 U. S. 292, 300, 303, 304, the utility appealed from the order of the commission to the Supreme Court of Ohio, and in *Chicago Junction Case*, 264 U. S. 258, 262, 263, and *Interstate Commerce Com. v. Louisville & Nashville R. R. Co.*, 227 U. S. 88, 93, the aggrieved railroad companies promptly instituted suit to challenge the validity of the order, the recognized method of redress—see 264 U. S. pp. 267, 268. Mr. Justice BRANDEIS pointed out in *Myers v. Bethlehem Shipbuilding Corp.*, 303 U. S. 41, 50, that it was a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." See also *First Nat. Bank v. Board of County Commrs.*, 264 U. S. 450, 455, 456; *Anniston Mfg. Co. v. Davis*, 301 U. S. 337, 343; *Rohrer v. Milk Control Board*, 322 Pa. 257, 280, 186 A. 336; *Com. ex rel. Margiotti v. Ortwein*, 132 Pa. Superior Ct. 166, 175, 176, 200 A. 859.

The practice prescribed by our Milk Control Acts

was fully considered by our Supreme Court, speaking through Chief Justice KEPHART, in *Colteryahn Sanitary Dairy v. Milk Control Com.,* 332 Pa. 15, 20, 21, 22, 23, 1 A. 2d 775. After discussing at length the practice prescribed by the Act under consideration, Chief Justice KEPHART went on to say: "It is well settled under the Act of March 21, 1806, P. L. 558, section 13, that where statutory remedies are provided, the procedure prescribed by the statute must be strictly pursued, to the exclusion of other methods of redress. *Bowman v. Gum, Inc.,* 321 Pa. 516; *Commonwealth ex rel. v. Margiotti,* 325 Pa. 17, 32. This is particularly true of special statutory appeals from the action of administrative bodies: *White et al. v. Old York Road Club et al.,* 318 Pa. 346; *Taylor v. Moore,* 303 Pa. 469; *Ermine v. Frankel et al.,* 322 Pa. 70. While a person aggrieved by an order may request the Commission to revise its findings [Section 801] this is not a necessary preliminary to appeal. The Act does not so command, and such procedure is permissive only. The failure of these parties to so proceed was not error." There is nothing in the opinion in the Colteryahn case which gives color or support to the contention here advanced by appellant.

The record in the present case shows that the board held numerous public hearings at which many producers, milk dealers and their respective employees appeared as witnesses and gave testimony, and were examined and cross-examined. There was ample evidence in the record to support the order. The statement filed, as required by the Act, giving the findings of fact in support of, or reasons for the order showed on its face that certain audits, made pursuant to a consultation between the board auditors and counsel representing the milk dealers, had been consulted by the board in arriving at their conclusions. If deemed improper, an appeal could have been taken by appellant to the Court of Common Pleas of Dauphin County and the erroneous action of the board would have been corrected, and

the record sent back to the board to have all the evidence considered placed in the record and opportunity given for cross-examining the witnesses with respect to it. Not having availed itself of the remedy furnished by the statute, and the record showing many public hearings and much evidence to support the order, the error of the board cannot now be pleaded as a defense to a proceeding brought to enforce the penalty for violating the order. The case bears no likeness at all to *Holgate Bros. v. Bashore,* 331 Pa. 255, 200 A. 672, cited by appellant.

(2) Appellant's second position is said to be based on the opinion of the Supreme Court of the United States in *Morgan et al. v. United States,* 304 U. S. 1; but a careful reading of that case in connection with *Morgan et al. v. United States,* 298 U. S. 468, shows that the facts involved in it were so different from those in this case that the conclusions therein arrived at are not governing here.

In the Morgan case, the proceeding was instituted by an order of the Secretary of Agriculture in April, 1930, directing an inquiry into the reasonableness of existing rates charged by market agencies for buying and selling livestock at the Kansas City Stock Yards. The appellants, fifty in number, were *respondents* in the proceeding. In the present case, there was no complainant or prosecutor and there were no respondents. The proceeding was instituted pursuant to the directions of the Milk Control Board Law, supra, to fix and determine the fair and reasonable minimum prices to be paid producers for milk sold by them and the minimum wholesale and retail prices to be charged by milk dealers for milk sold by them, such as would be most beneficial to the public interest, with the view of protecting the milk industry, so as to insure a sufficient quantity of pure and wholesome milk.

In the Act of Congress, under which the Morgan case arose, Packers and Stockyards Act, 1921, 42 Stat. 159,

7 USC 181-229, no provision is made for an appeal from the order of the Secretary; in our case, provision is made for an appeal from the order of the board to the Court of Common Pleas of Dauphin County, the seat of the State government.

In the Morgan case, the testimony was taken before an examiner, and the Secretary of Agriculture promulgated an order fixing the rates to be charged by the stockyards involved without hearing or observing the witnesses of respondents or hearing the arguments of their counsel. In the present case, the Milk Control Board, the administrative agency which promulgated Order No. 28, itself personally conducted the hearings at which testimony was taken, heard and observed the witnesses, heard arguments of counsel, and accorded a full and complete hearing to all parties appearing or represented at the hearings, notice thereof having been given by bulletin and by newspaper notices in accordance with the Milk Control Board Law.

In the Morgan case, the respondents requested that the examiner prepare a tentative report to be submitted as a basis for exceptions and argument before the order became effective, so that they might know just what they would have to meet, which request was refused by the Secretary of Agriculture. No such request was made in this case by the appellant or anybody else.

In the Morgan case, after promulgation of the final order by the Secretary of Agriculture and service thereof on the respondents, they sought a rehearing before the Secretary of Agriculture, which was refused. In the present case, neither the appellant nor others affected by the order applied to the Board for a rehearing.

In the Morgan case, the respondent appellants appeared at the hearing on which the order was based, and offered voluminous testimony, including exhibits showing costs and expenses; they presented arguments before the examiner and submitted briefs. In the present case,

the records fail to show that this appellant entered an appearance at the hearing, testified, presented oral argument or submitted any briefs to the Commission, although notice of the hearing was given it, and an audit had been made of appellant's dairy business.

In the Morgan case, the respondents, following the refusal of a rehearing, took the course prescribed by law [1] for the redress of their grievances, and brought suit before a District Court of three judges, directly attacking the order, in so far as it prescribed the maximum charges for selling livestock, as illegal and arbitrary and as depriving them of their property without due process of law in violation of the Fifth Amendment of the Constitution. The present appellant did nothing. It failed to pursue the statutory remedy of appeal prescribed by the act, as referred to by Chief Justice KEPHART in the extract above quoted from the opinion in the Colteryahn case, and first raised the present ground of attack, over two years after its disregard and violation of the terms of the order, as a belated defense to a summary proceeding for such violation.

In the Morgan case, the findings, on which the order was based, were prepared in the Bureau of Animal Industry of the Department of Agriculture, whose representatives had conducted the proceedings for the Government and might properly have been termed the prosecutor[2] in the proceedings, and were submitted to the Secretary, who signed them after a few minor changes. The part taken by the Secretary himself in the departmental proceedings involved in the Morgan case was shown by his "full and candid" testimony.

---

[1] See 7 USC 217; 28 USC 47; "All questions touching the regularity and validity of the proceeding before the Secretary are open to review": 298 U. S. 468, 477.

[2] "In all substantial respects, the Government, acting through the Bureau of Animal Industry of the Department was prosecuting the proceeding against the owners of the market agencies." HUGHES, C. J. in 304 U. S. p. 20.

The evidence had been received before he took office. He did not hear the oral argument. The record—about 10,000 pages of oral evidence and over 1000 pages of statistical exhibits—was placed on his desk and he dipped into it from time to time to get its drift. He decided that probably the essence of the evidence was contained in the appellants' briefs. These, together with the transcript of the oral argument, he took home with him and read. No brief was submitted by the Government, the complainant, nor any statement or summary of its contention; and no proposed findings were presented by it. The Secretary had several private conferences with the solicitors of the Department of Agriculture and with the officials in the Bureau of Animal Industry, in the absence of appellants and their counsel, and discussed the proposed findings with them. He testified that he considered the evidence before signing the order. Save for certain rate alterations, he accepted the findings.

In the present case, the Milk Control Board were not strangers to the proceedings resulting in the promulgation of Order No. 28. On the contrary, after notice to all parties of record and in pursuance of the statute, the Milk Control Board itself presided at fair, open and protracted hearings, where testimony was taken, oral argument presented, and all parties affected were given full opportunity to be heard. Then, the Milk Control Board, from its own personal knowledge of the testimony and argument, filed its findings of fact above referred to, and promulgated order No. 28 based thereon.

In the Morgan case, the Supreme Court of the United States ruled that a "full hearing—a fair and open hearing," had not been had; "that those who are brought into contest with the Government in a quasi judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command." 304 U. S. pp. 18, 19; and that no such

reasonable opportunity was accorded the appellants in that case. Chief Justice HUGHES, in the course of his opinion said, "Congress, in requiring a 'full hearing', had regard to judicial standards,—not in any technical sense but with respect to those fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature. If in an equity cause, a special master or the trial judge permitted the plaintiff's attorney to formulate the findings upon the evidence, conferred *ex parte* with the plaintiff's attorney regarding them, and then adopted his proposals without affording an opportunity to his opponent to know their contents and present objections, there would be no hesitation in setting aside the report or decree as having been made without a fair hearing. The requirements of fairness are not exhausted in the taking or consideration of evidence but extend to the concluding parts of the procedure as well as to the beginning and intermediate steps."

None of the specific objections to the fairness of the hearing in the Morgan case are present in this one. We do not understand the opinion of the Chief Justice to mean that it is absolutely necessary in all cases, whether the hearing was had before an examiner or before the Board, Commission or officer[3] clothed with the authority, that a tentative or preliminary report *must* be filed, to which exceptions may be filed, and that these exceptions must be argued and disposed of before a final report can be filed, similar to the usual equity practice;

---

[3] See 304 U. S. 1, pp. 21, 22: "But what would not be essential if the Secretary himself makes the findings is not a, criterion for a case in which the Secretary accepts and makes as his own the findings which have been prepared by the active prosecutors for the Government, after an *ex parte* discussion with them and without according any reasonable opportunity to the respondents in the proceeding to know the claims thus presented and to contest them. That is more than irregularity in practice; it is a vital defect." HUGHES, C. J., p. 22.

nor that in the absence of such procedural requirements the order is *void*. While it has been somewhat loosely said that "the order is void," if a hearing was denied; or if the hearing was inadequate or manifestly unfair; or if the finding was contrary to the "indisputable character of the evidence"; or if the facts found do not as a matter of law support the order, (*I. C. C. v. L. & N. R. Co.*, 227 U. S. 88, 91); a review of the decisions cited in support of the statement shows that in such circumstances the order would be held *erroneous or invalid and set aside,* if a proper proceeding to attack the fairness of the hearing and the legal support for the order was resorted to. The Chief Justice's opinion lends no support to the theory that the appellants in the Morgan case could have neglected to take proceedings under section 217 of the Stock Yards Act and done nothing to restrain the enforcement, operation or execution of, or to set aside the order of the Secretary of Agriculture, and still escaped liability for the $500, imposed by way of forfeiture under section 215, for failing to obey the order. If opportunity is given by some other means than a tentative report and exceptions, to test judicially the fairness of the hearing, and the character and the legal sufficiency of the evidence to support the findings on which the order is based, as was afforded the appellant in this case, by appeal to the Court of Common Pleas of Dauphin County, the party deeming itself aggrieved by the order has no just ground of complaint. The General Assembly, in our statute, did not see fit to require the Milk Control Board to issue a tentative order, accompanied by findings of fact and conclusions of law, and serve the same upon all parties affected by the order and afford them an opportunity of filing exceptions to said tentative order and arguing the same before the board prior to said general order becoming effective. It did require the board to file with its order fixing the price of milk a statement in writing of the findings of fact in support

of, or the reasons for, such order; and provided for notice of the filing of the order to all interested parties; and that any person aggrieved by an order of the board fixing the price at, or the terms upon, which milk may be bought or sold, or by any other general rule, regulation or order of the board, might file an appeal therefrom in the Court of Common Pleas of Dauphin County; and that court was authorized to hear and determine the questions now raised by this appellant, and consider and determine the legality of the order, including the fairness and adequacy of the hearings, whether the findings were based on competent and substantial evidence, and whether as a matter of law they supported the order. See *Colteryahn Dairy Co. v. Milk Control Com.,* 332 Pa. 15, 1 A. 2d 775.

Appellant, not having availed itself of the means and measures supplied by the legislature for a direct attack upon the lawfulness of the order, cannot two years later present the same grounds collaterally by way of defense to a proceeding brought against it for violation of the order.

Whether or not the order might have been set aside on appeal to the Common Pleas of Dauphin County—as to which we are not here concerned—appellant cannot defend, in this summary proceeding for violation of the order, by a collateral attack on its validity, based on matters which it could have and should have raised and had determined by appeal to the common pleas.

The judgment is affirmed.