## Wilson v. Milk Control Commission

*Adolph L. Zeman,* for appellants.

*McAlister & Zelt,* for intervener.

*Peacock & Walker* and *Henry M. Bruner,* for defendant.

GIBSON, P. J., April 29, 1946.—On December 10, 1945, William Wilson, C. M. Plants, and W. S. Patterson, on behalf of themselves and some 21 other persons similarly situated, filed their petition and appeal from an order of the Milk Control Commission of the Commonwealth of Pennsylvania, alleging that petitioners and all those similarly situated reside and have their principal places of business in Washington County, Pa.; that for a long period they had all been engaged in the business of producing and selling milk, and had been for sometime past selling milk to Carl A. Colteryahn, trading as Carl Colteryahn Dairy, 1614 Brownsville Road, Pittsburgh, who held a milk dealer's license no. 1869, granted by the Milk Control Commission of the Commonwealth of Pennsylvania for the year beginning May 1, 1945; that the Milk Control Commission issued a citation directed to the milk dealer, which was proceeded with as specified in the petition; that petitioners sought leave to intervene in that proceeding, which was refused by the presiding member of the Milk Control Commission, and the proceeding resulted in an order dated November 20, 1945, by the Milk Control Commission that the milk dealer's license no. 1869 for the year beginning May 1, 1945, be revoked and the right of the milk dealer to apply for a milk dealer's license for the year beginning May 1, 1946, be revoked, the revocation to take effect 30 days from November 20, 1945; that petitioners and others similarly situated "have been seriously aggrieved by the order of the commission" in that it will work great hardship on petitioners and those similarly situated, requiring them to find other markets for their milk and find other persons to haul their milk to market, requiring them to receive less money for their milk, requiring them to join certain organizations and pay certain fees and commissions to protect themselves against the effect of the order complained of, and that

they are aggrieved because of the refusal of the commission to permit them to intervene, that the order is arbitrary, discriminatory, and unreasonable, and interferes with their market and means of livelihood; and praying that the order of the commission be reversed or revoked, for general relief, and for an order of supersedeas.

Thereafter, on December 13, 1945, Carl A. Colteryahn, trading as Carl Colteryahn Dairy, filed his petition for leave to intervene in the appeal so taken. Intervention was allowed, and it was ordered that the appeal act as a supersedeas, and he was required to file his bond, which bond was filed.

On January 10, 1946, defendant, Milk Control Commission of the Commonwealth of Pennsylvania, appeared by its counsel and filed a petition for a rule to quash the appeal and that the order of supersedeas be vacated. At that time the court ordered the petition filed and to be treated as a motion to quash, and, as such, placed on the next argument list. The case was argued on the motion, and the petition to quash and vacate the supersedeas is now for disposition without reference to the merits of the case.

There seems to be some misconception as to the proper procedure. The whole proceeding is statutory and there may be a question whether or not a petition for a rule to quash an appeal should have been filed.

Section 904 of the Milk Control Law of April 28, 1937, P. L. 417, as amended by the Act of July 24, 1941, P. L. 443, provides that the commission may, on or before the return day, file a motion to dismiss the appeal, raising questions of law or attacking the form or sufficiency of the petition. Our understanding of the general procedure is that a proceeding is to be quashed only for defects appearing upon the record. This appears to have been well established as far back

as 1877 (see Blackburn et al. v. Watson, 85 Pa. 241) ; so that new facts cannot be injected by filing a petition to quash in lieu of a motion. The proceeding designated by the Milk Control Law should have been followed. It is a motion to dismiss the appeal, raising questions of law or attacking the form or sufficiency of the petition to appeal, or the filing of an answer by the commission upon which the appeal is heard on its merits. We shall treat defendant's petition for rule to quash the appeal as though it were the motion designated by the Milk Control Law, disregarding the new or additional facts alleged in the petition.

The questions of law apparently raised in what defendant has called its "Petition for a Rule to Quash Appeal" are:

1. Do appellants have the right to appeal from a special order of the Pennsylvania Milk Control Commission when they fail to appeal from the general order of the Milk Control Commission fixing prices? It does not appear in the appeal petition that appellants did not appeal from the general order fixing prices. That is sufficient answer. However, when the question of the justness and fairness of prices is not involved in a special order, we do not see how failure to appeal from a general order fixing prices can in any manner affect these appellants.

2. Can present petitioners appeal when they are not named as parties defendant in the original action of the Milk Control Commission against Carl A. Colteryahn, etc., and where they were denied the right to intervene in that hearing, and because they are not affected adversely by the special order made in that case? The question assumes the correctness of the commission's ruling that the parties petitioner here could not intervene. We seriously question that ruling. The whole theory of the Milk Control Law is that there

shall be an adequate supply of wholesome milk furnished to consumers at a reasonable price and under sanitary conditions; that this is essential to the health of the community; that milk is a highly perishable commodity and must be promptly marketed to the consumer. From a broad view of the Milk Control Law there are three parties vitally interested. First, the producer who must find a market for his highly perishable commodity; second, the distributor or dealer who must by sanitary methods promptly deliver this highly perishable commodity to the consumer; and third, the consumer who is entitled to the regular delivery of an adequate supply of this human food vital for the promotion of public health under sanitary and healthful conditions at a reasonable price. Each and all of them must be borne in mind in making any decision affecting the milk industry and the Milk Control Law as a whole recognizes this. Where, as a result of the hearing, the death sentence is imposed upon a business carried on for many years, shutting off the market of various producers on one hand and taking away the supply of many consumers on the other hand, we are satisfied that the ruling of the commission, in refusing the petition of the producers to intervene, was erroneous. That the commission recognized the serious effect of the course adopted is indicated by the fact that the effective date of the commission's order was suspended for a period of 30 days.

That part of the reason suggested "by reason of the fact that they are not affected adversely by the special order of the commission promulgated in the action of Milk Control Commission of Pennsylvania v. Carl A. Colteryahn, trading as Carl Colteryahn Dairy", is based on a false premise. The petition for appeal states that they are adversely affected. So far a this proceeding is concerned, that is conclusive. Defendant cannot raise questions of law and dispute facts on a motion to

dismiss, and if appellants were producers furnishing their supply to the Colteryahn Dairy and this was their market, it is obvious they were adversely affected.

On the record as filed, this is as far as we are required to go since, under the Milk Control Law above referred to, the questions of law upon which we are required to act are those set forth in the motion.

Counsel for defendant has seen fit to file a brief on entirely different questions of law, and, while the procedure is peculiar and we are not required to go into them, we think perhaps confusion can be avoided by consideration of them, and therefore do so in the order in which they are presented in the brief.

■ Counsel assume correctly that if a milk dealer appeals, his residence and place of business being in Allegheny County, the appeal must be filed in the court of common pleas of that county, and raised the question whether or not this court may assume jurisdiction where the producers appeal.

Any jurisdiction which this court has must depend on the provisions of the Milk Control Law. That is determined by section 902 of that act, which provides:

"Any person aggrieved by an order of the commission in which the commission refuses to issue, reissue or transfer, or revokes or suspends, a license to operate as a milk dealer, or by any other order of the commission applying only to a particular person or persons named therein and not otherwise specifically provided for, may, within twenty (20) days after the service of such order, file an appeal therefrom in the court of common pleas of the county in which he resides or has his principal place of business,". . .

Appellants state that they and those similarly situated reside and have their places of business in Washington County and that they are aggrieved by the order and state in what manner they are so aggrieved. The provision of the act is broad and covers "any person ag-

grieved". The legislature could have limited the appeal to the person or persons named in the order. It did not do so, but under the broad policy running all through the act recognized that a refusal to issue, reissue or transfer a milk dealer's license, or the revocation or suspension of such a license, may affect not only the dealer but also producers and consumers; and where appellants reside in this county and sufficiently aver that they are aggrieved by a special order of the commission, we are required to hear and determine the appeal.

■ The second question which the brief poses is, Can petitioners intervene when the order as to the milk dealer has become final and petitioners have suffered no loss by reason of the order? This question assumes facts which do not appear in the proceeding. At the time of this appeal the order had not become final so far as anything appears in this record. We have been unable to ascertain when service of the order was made on appellants who unquestionably should have been permitted to intervene and been made parties. Neither can we find anything indicating when service was made on Carl A. Colteryahn, the party against whom the citation was issued. Counsel also assumes that petitioners have suffered no loss by reason of the order. This is not the fact as set forth in the petition to appeal which we have pointed out we are required to accept as true.

■ The third question which counsel poses is, Can petitioners here intervene from the final order of the commission on grounds which are purely speculative? Again, counsel for defendant bases a question of law on an assumption contradictory to the allegations of the petition for leave to appeal. We do not see any reason for assuming that the grounds upon which the appeal is based are purely speculative. Accepting the allegations in the petition for appeal as true, they are not.

■ The fourth question posed in the brief is, Can a milk dealer who has not appealed from an order of the commission intervene in an appeal by others and thus collaterally attack the order? First, it might be stated that intervening in an appeal by any one from an order is not a collateral attack on the order. Of course, an order cannot be attacked collaterally: Commonwealth v. Ziegler Dairy Co., 139 Pa. Superior Ct. 224; Commonwealth v. Jackson, 146 Superior Ct. 328. This appeal is a direct attack. We do not think the legislature contemplated there would be numerous appeals by various persons aggrieved by a special order of the commission in the various counties in which the aggrieved persons reside. Defendant is not harmed by permitting the intervention in an appeal already filed by any person who is aggrieved. However, it is immaterial to the appeal whether or not Colteryahn is permitted to intervene if there is one appellant who is aggrieved. On his appeal the action of the commission may be reviewed.

■ Defendant complains that a supersedeas was issued by this court and requests that that portion of the order be vacated. When this case was presented, the writer of this opinion was impressed with the seriousness to the normal and orderly business of producing and distributing milk to consumers which the broad purposes of the Milk Control Act sought to promote and encourage on a profitable basis; that a supersedeas was necessary to prevent the carrying out of a death sentence which would totally destroy the market both to the producer and consumer; that merely retaining the status quo could not harm any one, and consequently the order of supersedeas was made. After hearing the arguments and on consideration of the case, we are firmly convinced that order was a proper one. It is obvious that where one has built up a milk route over a long period of years and is prohibited from

supplying that route for one and one-half years, there will, after that time, be no route to supply. He cannot thereafter furnish the market for his previous producers and they have lost their market during the time he was restrained. Markets for commodities cannot be lightly treated. Wars have been fought over them, and it is absurd to say that the market of a producer can be cut off and that he will not be aggrieved thereby. The seriousness of the threatened situation required a supersedeas.

### Order

And now, April 29, 1946, defendant's motion to dismiss the appeal and to quash the order of supersedeas is overruled, and the prothonotary shall forthwith give notice thereof to counsel appearing of record, and leave shall be given to Milk Control Commission to file an answer within 30 days after the date of this order.