## Collins et al., Appellants, *v.* Public Service Commission.

*Public Service Company Law — Public Service Commission — Motorbusses—Certificate of public convenience.*

Under the Public Service Company Law, the Public Service Commission has jurisdiction to determine what transportation service is necessary or desirable for the convenience, comfort and safety of the public.   Such jurisdiction extends to municipalities as well as to the state at large.   It is an administrative question rather than one of law, and one which must be left in a large degree to the sound judgment of the Public Service Commission.

A municipality cannot ordain that certain individuals or corporations may operate motor vehicles as common carriers upon the streets of the city, while denying that right to other individuals or companies which operate vehicles under like conditions.   It

has authority to adopt general reasonable regulations applicable to all motor vehicles transporting passengers for pay within the city, and to designate certain streets upon which said vehicles may operate.

No individual or company has the right to operate such motor vehicles as a common carrier for the transportation of passengers, without first obtaining from the Public Service Commission a certificate of public convenience.

An order of the Public Service Commission, granting a certificate of public convenience to a motorbus company to operate through the streets of the municipality will be affirmed, where the principal reason for protesting was that the holder of the certificate had not first obtained a municipal franchise to operate within the municipality.

Argued March 14, 1924. Appeal, No. 309, Oct. T., 1923, by complainants, from order of the Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket, No. 7522, 1923, refusing certificate of public convenience to Chester Auto Bus Line. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Petition to the Public Service Commission for certificate of public convenience.

The facts are stated in the opinion of the Superior Court.

The Public Service Commission refused to grant a certificate. The petitioners appealed.

*Error assigned* was, among others, the order of the commission.

*Albert Dutton MacDade,* and with him *Joseph H. Taulane,* for appellants.

*Howard E. Hannum,* for intervening appellee. *Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY PORTER, J., October 17, 1924:

The appellants, having taken the necessary preliminary steps to secure a charter, filed their application with the Public Service Commission for approval of the incorporation of the Chester Auto Bus Line and for a Certificate of Public Convenience authorizing the Chester Auto Bus Line to begin the exercise and privilege of operating motor busses as a common carrier of passengers for hire over certain routes in the City of Chester. The Southern Pennsylvania Bus Company, a corporation to which the Public Service Commission had already issued a certificate of public convenience authorizing the operation of motor busses over practically the same routes; the Southern Pennsylvania Traction Company and a large number of operators of jitneys filed protests against the granting of a certificate of public convenience to the appellants, alleging among other grounds of protest, that the particular section of the city referred to in the application of the appellants was already sufficiently served by existing lines of common carriers, and that the public convenience would rather be impaired than promoted by the entry therein of the proposed new corporation. Public hearings were held, testimony was taken, and the case was argued before the commission. The result was that the Public Service Commission refused to issue the certificate prayed for and dismissed the petition, from which action we have this appeal.

It seems clear that if the public service company law is to be regarded as controlling, the question was entirely within the jurisdiction of the commission. What number of motor vehicles operated as common carriers of passengers for hire would promote the public safety, convenience and comfort of a given community is surely not a question of law. The opinion filed by Mr. Ainey, chairman of the commission, sets forth an appropriate reason for the action of the commission. There is nothing in the record that would warrant us to declare it to be an illegal reason, unless we accept as sound the doc-

trine urged by the able counsel for the appellants, to wit, that "The use of the streets of the City of Chester is in the absolute keeping of the city and no power or agency of the State could grant any power or authority to any individual or corporation to use the streets of the City of Chester without the consent of the City of Chester first had and obtained."

The Public Service Commission had, prior to the application of these appellants, granted a certificate of public convenience to the Southern Pennsylvania Bus Company, authorizing the operation of motor vehicles as common carriers of passengers for hire over substantially the same routes upon which the appellants propose to operate. The commission found after a full hearing upon the application of these appellants that there was no necessity for the grant of the right to operate by a second bus company, saying: "There can be no question that one bus service would be ample for all requirements, nor that, if two were established, they would destroy each other and thus deprive the public of service necessary for its accommodation and convenience." That this finding was in all respects correct was conceded by the petitioners in the proceedings before the Public Service Commission and they here frankly so concede in their brief, as follows: "If the Southern Pennsylvania Bus Company had a franchise and could operate autobusses along the streets of the City of Chester, the present applicants would not have presented their petition because there would not have been business enough for two rival companies along the same route, but as the Southern Pennsylvania Bus Company cannot operate because it has no franchise from the City of Chester there is no reason why the Chester Auto Bus Line should not be operated."

The contention of the appellants is founded upon the assertion that the City of Chester has absolute control of its streets and is authorized to grant an exclusive franchise to one individual or company to operate motor ve-

hicles as common carriers of passengers for hire over its streets, and that "no power or agency of the State could grant any power or authority to any individual or corporation to use the streets of the city." The learned counsel for appellants has not called our attention to any local or special law applicable to the City of Chester which vests in that municipality the supreme authority now contended for. Municipal corporations are agents of the State, invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed, and the extent of their powers determined by the legislature, and subject to change, repeal or total abolition at its will: Com. v. Moir, 199 Pa. 534. The Act of June 1, 1915, P. L. 685, conferred authority upon cities to regulate the transportation by motor vehicles (not operated on tracks) of passengers or property for pay, within the limits of the city, or from points in the city to points beyond the limits of the city. This general grant of the power to regulate the operation of such vehicles was considered by the Supreme Court in the case of Jitney Bus Assn. v. Wilkes-Barre, 256 Pa. 468, and it was there held that an ordinance regulating the operation of such vehicles must be reasonable and not unduly burdensome. "Regulation is not to be carried to the extent of prohibition." The concluding sentence of that statute which empowered cities to "designate certain streets upon which such vehicles, if operated, must be operated," was held by this court, in Setzer v. City of Pottsville, 73 Pa. Superior Ct. 575, to grant authority of a specific character and that it was within the power of the city to pass a general ordinance, applicable to all who used the streets under like conditions, enacting that certain streets must not be used for the operation of motor vehicles operated as common carriers of passengers or property for hire.

The powers of the cities to control their streets are dependent upon legislative grant, expressly or by necessary implication: Appeal of the City of Pittsburgh, 115 Pa.

4; M. & S. Ry. & L. Co. v. New Castle, 233 Pa. 413; Edgewood Boro. v. Scott, 29 Pa. Superior Ct. 156. The latest expression of the legislative will relating to the powers of the cities in regulating motor vehicles transporting passengers for hire is to be found in the 9th and 28th sections of the Motor Vehicle Law, Act of June 30, 1919, P. L. 678, as amended by the Acts of May 16, 1921, P. L. 582, and June 14, 1923, P. L. 718. That legislation authorized cities to regulate transportation by motor vehicles of passengers for pay within the limits of the city or from points in the city to points beyond its limits, and make and enforce regulations for operation of such vehicles, "not inconsistent with this act, and designate certain streets upon which such vehicles may be operated." There is nothing in this legislation which clothes the city with authority to confer special privileges on any operator of motor vehicles as common carriers. The general regulations which it adopts must be reasonable, not unduly burdensome, and they must be uniformly applicable to all who operate under like conditions. It is not within the power of the City of Chester to ordain that these appellants may operate motor vehicles as common carriers upon the streets of the city while denying that right to other individuals or companies which operate vehicles under like conditions. It has authority to adopt general reasonable regulations applicable to all motor vehicles transporting passengers for pay within the city, and to designate certain streets upon which such vehicles may be operated. No individual or company has a right to operate such a motor vehicle as a common carrier for the transportation of passengers, without first obtaining from the Public Service Commission a certificate of public convenience. What service of this character is necessary or desirable for the convenience, comfort and safety of the public is a matter which the law requires to be determined by the Public Service Commission. That is an administrative question rather than one of law. It is a question which must be

left in a large degree to the sound judgment of the commission and when that judgment has been exercised upon competent and relevant evidence the conclusion ought not to be disturbed by judicial interference unless it is made clearly to appear that it is unreasonable and not in conformity with law. In such cases the orders of the commission are declared by the statute to be prima facie evidence of .the reasonableness thereof and the burden of establishing the contrary rests on the appellant. In determining the questions involved in this proceeding, the court confines itself to the ultimate question as to whether the commission acted within its power. It will not consider the expediency or wisdom of the order or whether on like testimony it would make a similar ruling. After full consideration of the evidence we are unable to find any satisfactory ground upon which to rest the conclusion that the order entered is so manifestly unreasonable as to justify its reversal; nor is there any reason for holding that it was not in conformity with law.

The order of the Public Service Commission is affirmed and the appeal dismissed at cost of the appellants.