Hoffman et al. *v.* Public Service Commission.

418

Argued May 6, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Harold Evans* of *MacCoy, Evans, Hutchinson & Lewis,* for appellant.

*William A. Schnader,* and with him *M. Randall Mar-ston,* for intervening appellee.

*John Fox Weiss,* Counsel, and with him *E. Everett Mather, Jr.,* Assistant Counsel, and *Daniel H. Kunkel,* Legal Assistant, for the Public Service Commission.

OPINION BY GAWTHROP, J., September 29, 1930:

Appellants, after taking the necessary preliminary steps to secure a charter, formally applied to the Public Service Commission for the approval of the incorporation of the Universal Cab Company and for a certificate of public convenience authorizing the Universal Cab Company to begin the exercise of the privilege of operating "taxicabs, automobiles and kindred motor vehicles ...... as a common carrier for the transportation of persons and incidental baggage upon call and demand in the City and County of Philadelphia and vicinity." The Yellow Cab Company, a public service company which is a subsidiary of the Philadelphia Rapid Transit Company, and a number of other corporations and individuals to whom the Public Service Commission had already issued certificates of public convenience authorizing the operation of taxicabs in the same territory, filed protests against the granting of a certificate of public convenience to appellants. They alleged, among other grounds of protest, that adequate taxicab service was already being rendered by them in the territory referred to in the application and that there was no necessity for any additional facilities of that nature; and that Ford taxicabs, which the applicant proposed to use, are not safe and suitable vehicles for such service in a large city. After public hearings before the commission, at which evidence occupying 430 pages of the printed record was taken, and argument by counsel, that tribunal refused and dismissed the petitions for the incorporation of the company and for the certificate of public convenience, from which action we have this appeal.

The commission refused to find that the Ford taxicab was unsafe or unfitted for the public vehicular use proposed. It based its action on findings of fact that the taxicab service being furnished by the persons and companies now operating is adequate to accommodate the public; that additional taxicab service in Philadelphia is not necessary; and that the applicant could not operate at a profit on the proposed fare basis of thirty cents for the first mile and twenty cents for each subsequent mile—which is ten cents less per mile than the present standard rates in Philadelphia—and that, therefore, approval of its incorporation and the right to do business would result in creating wasteful and destructive competition between public utilities that would be inimical to the public interest.

Appellants contend that the order of the commission is unreasonable and not in conformity with law because (1) taxicabs operating in call and demand service are not within the jurisdiction of the commission; (2) the evidence does not sustain the finding of fact that the present taxicab service in Philadelphia is adequate to accommodate the public; (3) the evidence does not sustain the finding that the proposed rate would not be remunerative; (4) the commission considered facts alleged by it to be within its knowledge but as to which there is no evidence in the record; (5) the principle that destructive competition between utilities is inimical to the public interest should not be applied to operators of taxicabs.

(1) The contention that taxicabs operating in call and demand service are not within the jurisdiction of the commission is unsound. The Public Service Company Law of July 26, 1913, P. L. 1374, Art. I, Sec. 1, declares that ''The term 'public service company,' when used in this act, includes ...... all common carriers;'' that ''The term 'common carrier' as used

in this act, includes any and all common carriers whether corporations or persons, engaged for profit in the conveyance of passengers or property, or both, between points within this Commonwealth by, through, over, above or under land or water, or both." Appellants' proposition is that the words "between points within this Commonwealth," as used in the part of the act above quoted, limit the application of the act to common carriers operating over fixed routes and between definite points; and that when a taxicab picks up passengers wherever it can and transports them wherever they desire to go, it is not operating "between points" within the meaning of those words. This contention is without substance. This court was required to interpret the phrase "between points within this Commonwealth," in Scranton Ry. Co. v. Fiorucci, 66 Pa. Superior Ct. 475. The contention was made in that appeal that the words "between points" did not apply to operators confined to the limits of a city or town. In refusing to adopt such a construction, this court held that the Public Service Company Law of 1913 "was designed to regulate all public carriers and the legislative intention was not to make an exempted class of public carriers operating wholly within the limits of a city and including those who ran beyond." In considering the effect of the words "within the Commonwealth" the court said that the words were "evidently used to designate intrastate commerce as distinguished from interstate traffic." All common carriers engaged in intrastate service within our borders are subject to the provisions of the Public Service Company Law. It follows that the commission had jurisdiction over the subject matter. Under the terms of Art. III, Sec. 2, of the Public Service Company Law, the approval of the commission, evidenced by its certificate of public convenience, was necessary

before appellants could be incorporated or begin to do business as a common carrier.

(2) Nor is there any merit in the contention that the evidence does not sustain the commission's finding of fact that the present taxicab service in Philadelphia is adequate to accommodate the public. The question, what number of motor vehicles as common carriers for hire is necessary or desirable for the convenience, comfort and safety of the public, is not a legal but an administrative one, which the law requires to be determined by the Public Service Commission: Collins v. Pub. Serv. Com., 84 Pa. Superior Ct. 58, 61. We said in that case: "It is a question which must be left in a large degree to the sound judgment of the commission and when that judgment has been exercised upon competent and relevant evidence the conclusion ought not be disturbed by judicial interference, unless it is made clearly to appear that it is unreasonable and not in conformity with law. In such cases the orders of the commission are declared by the statute to be prima facie evidence of the reasonableness thereof and the burden of establishing the contrary rests on the appellant. In determining the questions involved ...... the court confines itself to the ultimate question as to whether the commission acted within its power. It will not consider the expediency or wisdom of the order, or whether on like testimony it would make a similar ruling." It is not for us to interfere with their finding when there is sufficient evidence to sustain their conclusion: Pottsville U. T. Co. v. Pub. Serv. Com., 67 Pa. Superior Ct. 304. The appellants undertook to prove the inadequacy of the existing service by the introduction of an exhibit prepared from information gathered in twenty of the largest cities in the United States, showing that in fifteen of these cities there are more taxicabs per unit of population than in Philadelphia, and that Philadelphia has less than one-half as many taxi-

cabs per unit of population and six-tenths as many per unit of territory as the average of these twenty cities. They showed also that the number of taxicabs licensed to operate in Philadelphia in the year 1927 was 2,142 and in 1929 the number was 1,317. The only other evidence offered by them on this subject was that of Mr. Hoffman, one of appellants, who testified that many of his customers had complained to him that they could not get a cab or bus. The testimony of ten other witnesses called by appellants threw little light on the question of the adequacy of the present service, as it consisted almost entirely of expressions of opinion that it is desirable to have taxicab service at the lower rates proposed by appellants, or "competitive taxicab service," or expressions of a desire to "go on record as being against taxicab monopoly." Protestants called several witnesses who testified that taxicab service is obtained in Philadelphia with reasonable promptness, either from the street or by telephone call. There was evidence that both the Yellow Cab Company and the Quaker City Cab Company at the time of the hearings before the commission had in reserve a large number of taxicabs which were ready for service but were not needed for the public demand; and that throughout the country, since 1927, there had been a decrease of the number of taxicabs operated. As this evidence warrants a finding by the commission that the present taxicab service in Philadelphia is adequate, we may not interfere with it. We agree with the observation of the commission in the part of its report discussing this question, that comparisons of the number of taxicabs operated in different cities proves little, because circumstances are not similar or properly comparable; that a large number of factors differentiate taxicab operating conditions as between different cities; and that the number of vehicles in

service in them is not an accurate criterion of the adequacy of service rendered.

(3) The contention that the evidence does not support the finding that the proposed rates would not be remunerative cannot be sustained, for similar reasons. It would serve no useful purpose to discuss in detail the voluminous testimony taken upon the subject of the cost of operation of the vehicles proposed to be used by appellants. After a careful study of all of the evidence we are satisfied that it fully justifies the following statement found in the report of the commission: "The principal estimate submitted in support of the application indicated that the Ford cabs could be operated at a net profit of $.01435 per total miles. The only experienced operator called in support of the application gave figures to indicate that instead of a profit, there would be a per total mile loss of $.01122. One of the experienced operators called by the protestants submitted figures which estimated a total of $.00075 profit per mile, but this was qualified as being applicable to the operation of a fleet of taxicabs several times larger than that proposed to be initially installed by the applicant. Remaining experienced taxicab operator witnesses submitted figures which resulted in estimated operating per mile losses of $.01065, $.01140, $.02352, $.00685, and $.01635 ...... With the exception of one witness the applicant's estimates of operating costs were not based upon actual experience in operating taxicabs, whereas those of the protestant were, in large measure, based upon the actual experience of established taxicab concerns which had operated Ford cabs for experimental purposes." Mr. E. S. Higgins, who was for five years vice-president and general manager of the Yellow Cab Company of Philadelphia, and before that superintendent of the Quaker City Cab Company,

and who is described by counsel for appellants as protestant's best informed witness, expressed the opinion that it is impossible to make a reasonable profit in Philadelphia at the rate suggested. There was evidence that the Ford taxicab will not attract as much business as the heavier standard modern cab and will earn less per day or per year. It follows that the contention, that the finding of the commission that the rates proposed to be charged by appellants would be unremunerative is unreasonable, lacks merit.

(4) The next contention of appellants is that the commission erred in considering facts alleged to be within its knowledge but as to which there is no evidence in the record. In their brief they confine this complaint to four findings of fact used by the commission in support of its conclusion that the granting of appellants' petition would result in wasteful and destructive competition between them and the Yellow Cab Company and the other operators of taxicabs in Philadelphia, which would be inimical to the public interest. The four findings said to be unsupported by any evidence in the record are: (a) "Prior failures of taxicab companies in Philadelphia;" (b) "that the City of Philadelphia asserts some property rights in the taxicabs owned by the Philadelphia Rapid Transit Company which would be adversely affected by the granting of the present certificate;" (c) that the assets of the Yellow Cab Company, intervening appellee, amount to $3,205,506, of which approximately $639,876 represents fixed assets;" (d) "that the maintenance of the Yellow Cab Company's telephone system is due largely to its attempt to prevent cruising." Counsel for the commission does not deny that in making the findings relative to these matters the commission considered evidence which was not formally offered in evidence, but appears in the records of other cases in

the office of the commission bearing on the taxicab situation in Philadelphia. The record discloses that at the hearing the commission announced that all parties ''may be under notice that the commission intends in its consideration of this application . ......... to take full consideration of the history of the taxicab service in this city as revealed and divulged by the records before the commission. I state this at this time with concurrence of my colleagues, in order that all the parties may be assured that they will get the broadest consideration of the questions here involved, based upon experience as shown by the records of the commission.'' Appellants acquiesced without protest in the avowed intention of the commission to consider the history of the taxicab service in Philadelphia, as disclosed by the records of the commission in prior cases, and were put on notice and given full opportunity to object or to make any showing in reference to the prior records which they deemed necessary. Later in the hearing the commission announced that it had before it the record in the Yellow Cab case which would be made available to the application of record if the applicant so desired, and that the applicant would have the benefit of the transcript of testimony with all the numerous exhibits. This statement resulted from an objection by counsel for the Yellow Cab Company, intervening appellee, to the cross-examination by appellants of protestant's witness to show the amount of the investment of the Yellow Cab Company. Still later in the hearing the commission announced that it would give consideration to all of its findings of record in matters pertaining to taxicab transportation in the City of Philadelphia. It seems quite clear, therefore, that counsel for appellants knew what evidence other than that contained in the record of the present case would be considered by the commission in reaching its conclusion. They

428

do not assert that the records which the commission said it would consider do not contain evidence supporting the findings of fact referred to in this complaint. The records were available to them. It is a fair inference that if those records do not support the findings complained of, evidence of that fact would have been produced. ["Mere admission by an administrative tribunal of matters which, under the rules of evidence applicable to judicial proceedings, would be deemed incompetent, does not invalidate an order made by it": Tagg Bros. & Moorehead v. U. S., 280 U. S. 420, 34 L. Ed. 287, 294. See also Schuylkill Ry. Co. v. Pub. Serv. Com., 268 Pa. 430. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal: Phila. Rapid Transit Co. v. Pub. Serv. Com., 78 Pa. Superior Ct. 593, 600. But an administrative tribunal may take notice of results reached by it in other cases, when its doing so is made to appear in the record and the facts thus noted are specified so that matters of law are saved: U. S. v. B. & O. S. W. R. R., 226 U. S. 14; Re Steamboat Canal Co. v. Garson, 185 Pacific 801. In view of these and other kindred authorities and the attitude of acquiescence of counsel for appellants in respect to the proposal of the commission to consider the facts disclosed by other records in its files involving the history of taxicab service in Philadelphia, we are not persuaded that it was reversible error for the commission to treat these records as evidence in the case and ground certain findings of fact upon them.] Further justification for this conclusion is to be found in the fact that the findings made upon the evidence which is the subject of this complaint are merely collateral to the crucial question before the commission, whether the proposed service was "necessary or proper for the

service, accommodation, convenience or safety of the public.''

(5) The last contention which is most urgently pressed, is that the regulatory principle that destructive competition between utilities is inimical to the public interest is not applicable, and should not be applied to, taxicab service. A reading of the Public Service Company Law of this State compels the conclusion that one of the reasons for its enactment was the correction of existing methods of public utility regulation through the establishment of a body with the power to prevent competition in any particular utility field, and that the control of utilities as regulated monopolies, as opposed to destructive competition, was one of the objects to be obtained. The primary object of the public service laws is not to establish a monoply or to guarantee the security of investment in public service corporations, but first and at all times to serve the interests of the public. Unrestricted competition is ordinarily to be avoided, not because in the first place it injures the corporation against which it is directed, but because ultimately, the usual experience of man tells us, the losses ensuing are visited upon the public: Pottsville U. T. Co. v. Pub. Serv. Com., supra. The question before this court in that case was whether it was for the public interest to permit an autobus to run in competition with an electric railway line. It has been repeatedly held that the commission has power when the evidence so justifies its exercise to limit or prevent competition in the interest of the maintenance of adequate existing service. See Andrews v. Pub. Serv. Com., 88 Pa. Superior Ct. 306, and cases therein cited. The propriety of permitting competition in the same field is peculiarly one within the discretion of the Public Service Commission: Gongawere v. Pub. Serv. Com., 83 Pa. Superior Ct. 269. The argument that the order creates a monopoly of urban transportation in Philadelphia is sufficiently answered by the fol-

lowing statement of this court speaking through
KEPHART, J., in Jenkins Township v. Pub. Serv. Com.,
65 Pa. Superior Ct. 122, 144: "Under Art. II of the
Public Service Act the power is taken from public serv-
ice companies 'to enhance the price of commodities.'
The principle of common law monopolies has no appli-
cation to public utilities, which are now largely con-
trolled by the Public Service Law, not only with re-
spect to the price, but as to all questions which may
arise in connection with the service rendered." Ap-
pellants seem to concede the propriety of applying to
all utilities other than those operating taxicabs the
principle that destructive competition between public
utilities is inimical to the public interest, but they urge
that it is unreasonable to apply it to operators of taxi-
cabs because there is nothing monopolistic in the taxi-
cab business; that "to have two taxicabs operating in
competition is not waste. If one is not successful it can
be taken to another city where its service is needed,
and that the effect of the refusal to approve appel-
lants' application is to create a complete monopoly of
urban transportation in Philadelphia." The monopoly
feature of this contention has been answered above.
We find nothing in the Public Service Company Law
or in the business of operating taxicab service on call
and demand that warrants the conclusion that such a
utility should be exempt from the application of the
non-competitive policy. The policy of the Common-
wealth is to avoid destructive competition between
public utilities. (Harmony Elec. Co. v. Pub. Serv.
Com., 78 Pa. Superior Ct. 271.) We said in that case:
"The non-competitive policy is not absolute or a bind-
ing rule of law; for it is within the power of the Pub-
lic Service Commission, in its judgment, to permit a
competing company to be established." "The basis
of the action of the Commission is the interest of the

public distinguished from the interest of the corporation or individual making the application:" Perry Co. Tel. & Tel. Co. v. Pub. Serv. Com., 265 Pa. 274. Some leeway must be allowed to the Commission for the exercise of the discretion which the legislature has put into its hands and each case must be decided on its particular facts: Pottsville U. T. Co. v. Pub. Serv. Com., supra. The present case involves prospective competition between the applicants and the present operators of taxicabs in the third largest city in the United States. The Yellow Cab Company, intervening appellee, operates a highly organized city wide taxicab service, in which it uses almost a thousand cabs and employs about two thousand persons. It has two hundred and twenty-eight stands which are connected with its dispatching system by telephone. It leases five hundred and fifty-eight miles of telephone wire to enable it to render service to its patrons. Its investment is more than three millions of dollars. It appears that there are one hundred and twelve companies and individuals in Philadelphia holding certificates of public convenience to operate taxicabs. It is true that the Yellow Cab Company operates more cabs than all of the others combined. Appellants seek eventually to duplicate the equipment and service of the Yellow Cab Company. In the light of the findings by the Commission, supported by the evidence, that the applicants could not operate at a profit at the proposed rates of fare, and that if they were permitted to begin operations the probable result would be a rate warfare which would not only substantially eliminate the smaller operators of taxicabs of the city but also cause ruinous financial loss to the survivors and a condition inimical to the public interest, we think there was no abuse of discretion in refusing to permit the proposed competing company to be established.

432

The report of the commission fully justifies the order made.

The order is affirmed and the appeal is dismissed at the cost of appellants.