## Liebtag v. Dilworth

Before MILNER, P. J., WATERS and ULLMAN, JJ.

*Harry J. J. Bellwoar, Jr.*, for plaintiff,

*Lenard L. Wolffe*, assistant city solicitor, for defendants.

*Edward W. Madeira, Jr., Leon H. Kline* and *Joseph H. Foster*, for The Philadelphia Bar Association, amicus curiae.

..ULLMAN, J., May 11, 1961.—We have before us for consideration plaintiff's motion for summary judgment under Pennsylvania Rule of Civil Procedure 1098 in this action in mandamus and defendants' preliminary objections in the nature of a demurrer to plaintiffs' complaint in mandamus. Plaintiff, in his complaint, contends that he has been unlawfully and improperly denied the right to appear before the zoning board of adjustment on behalf of a party who seeks a variance; that the zoning board of adjustment has promulgated an invalid regulation which prohibits nonlawyers from practicing before the board and has thereby unlawfully deprived him of his right to so appear and earn a livelihood.

The committee on the Unauthorized Practice of the Law of the Philadelphia Bar Association petitioned and was granted leave to intervene amicus curiae. Extensive and able briefs and supplementary briefs were filed by all counsel and the matter was fully argued. It was agreed at the time of argument of this matter on the consolidated motion list that the record would be submitted to, and be considered by, the full court in view of the important questions involved.

Plaintiff, in his complaint, sets forth that he "is an individual who has, since 1952, earned his livelihood as an agent or representative, appearing before the Zoning Board of Adjustment of the City of Philadelphia, on behalf of persons who are parties in interest in matters heard and decided by said Board"; that on October 17, 1960, he appeared "as a duly au-

thorized agent of a party seeking a zoning variance and filed an application therefor with the Zoning Division of the Department of Licenses and Inspections" and that "said application was considered by the Department and the variance was not granted so, [he], still acting in his capacity of duly authorized agent of the party in interest, filed an appeal from the decision of the Zoning Division of the Department of Licenses and Inspections with the Zoning Board of Adjustment."

The complaint continues that "in due course, on November 9, 1960, the appeal came up for public hearing before the Zoning Board of Adjustment, and plaintiff appeared at the appeal as the duly authorized agent of the party in interest in the appeal"; that he "was forbidden and refused the right to appear and practice before the Zoning Board of Adjustment as a duly authorized agent of a party in interest."

Plaintiff averred in the complaint that on October 25, 1960, the zoning board adopted a new set of regulations governing practice before the board. Rule 8 of these regulations provided as follows:

"Any party may appear before the Board in person, or by an attorney at law, authorized to practice before the Courts of Common Pleas of Philadelphia County. Representation of any party by anyone other than an attorney as aforedescribed is prohibited."

Since plaintiff is not an attorney, he was not permitted to practice before the board, and he avers that "his right to appear before the Zoning Board of Adjustment . . . has been unlawfully denied; . . . that he has been and is being unlawfully and unconstitutionally deprived of his right to appear and to practice before the Zoning Board of Adjustment of the City of Philadelphia as an agent of a party or parties in interest in matters pending before said Board; . . . that Rule 8 of the Regulations of the Zoning Board of

Adjustment (is) illegal, unlawful and unconstitutional"; and that he has been unlawfully and unconstitutionally deprived of his means of livlihood, without due process of law. Plaintiff asks for a judgment "compelling the said Board to permit the plaintiff to appear before the said Board as authorized agent of a party . . . in matters before the Board; and declaring Rule 8 of the Regulations of the Zoning Board of Adjustment unlawful, in that it violates the provisions of Section 14-1802(2)(f) of the General Code of Ordinances of the City of Philadelphia and the Act of May 6, 1929, P. L. 1551 Section 8, 53 P. S. 14759 . . ."

Plaintiff has suggested that his motion for summary judgment may be considered but that we cannot consider the preliminary objections, because a trial is necessary to the development of essential facts. We are of the opinion that the record is sufficient to sustain a final determination as to the validity of rule 8. Plaintiff, in his brief, filed in support of his motion for summary judgment, appended thereto a transcript of the notes of testimony of the proceeding before the zoning board and referred to same to show that "proof of plaintiff's status was offered the Board" and to show that rule 8 was the only reason that he was not allowed to appeal. It was agreed at the time of argument that the transcript is accurate. We are of the firm opinion that such transcript offered by plaintiff, in support of his motion, may also be considered by the court on the subject of defendants' demurrer. We shall file the transcript with the record.

A demurrer by way of preliminary objections under Pa. R. C. P. 1017 has replaced the statutory demurrer under the Practice Act of 1915 (Brown v. Phillips Co. 365 Pa. 155, 160 (1950) ); it is still the appropriiate method for testing the sufficiency of an adverse party's pleading (Dutchess Underwear Corp. v. Swan

Manufacturing Co., 75 D. & C. 185 (1950)) ; a judgment should not be entered on a demurrer except in a case which is clear and free from doubt (Todd v. Skelly, 384 Pa. 423 (1956) ; Gardner v. Allegheny County, 382 Pa. 88 (1955) ; London v. Kingsley, 368 Pa. 109 (1951) ; Sun Ray Drug Co. v. Lawler, 366 Pa. 571 (1951) ; Hexter v. Haverford Township, 169 Pa. Superior Ct. 168 (1951)), and preliminary objections in the nature of a demurrer "admit every well-pleaded, material, relevant fact, and every inference fairly deducible from the facts pleaded": Byers v. Ward, 368 Pa. 416, 420 (1951) ; Condel v. Savo, 350 Pa. 350 (1944) ; Blieden v. Toll, 139 Pa. Superior Ct. 436 (1939) ; Ross Lumber Co. v. McMillan & Co., 69 D. & C. 47 (1949).

Plaintiff has contended that we cannot take judicial notice of the nature, functions and procedures of the board; that we must take testimony on such subjects. We do not agree. The court, to say the least, is quite familiar with zoning questions and need not receive testimonial advice on the subject. Our courts adjudicate many cases each year on appeal from the zoning board and are charged with the duty of knowing and enforcing the zoning law: English v. Zoning Board of Adjustment, 395 Pa. 118 (1959).

Plaintiff states as follows in his supplemental brief:

"There is nothing in the record to indicate . . . the type of matters heard by the Board, what examination or cross-examination, if any, is allowed; what facts are considered by the Board in formulating its decision; in short, there are no facts in the record at present which could allow the court to decide whether an appearance before the Zoning Board . . . (constitutes practice of law).

"As Mr. Justice Holmes once said, 'general propositions do not decide concrete cases.' "

However, the point is that we are able to consider

plaintiff's "concrete" case and need not concern ourselves only with "general propositions" as to the activities and considerations of the board. Plaintiff, on behalf of Olney Beverage Distributing Company, Inc., his client, prosecuted an appeal to the board in order to secure use and zoning permits for the "erection of a one-story addition as part of a beer distributor" in an area zoned "A" commercial and in the same block with "C" residential. The applicant sought extension of the use to the rear building line and a variance for the erection of a masonry building. It was stated at the hearing that the existing use was in violation of the zoning ordinance. At the time the matter came before the board for hearing, plaintiff sought "to present the facts" and sought "permission to appear on behalf of the owner of (the) property." He stated that he was not an attorney. After refusal of such permission, the case was presented by an attorney, and plaintiff testified as the sole witness for the applicant.

The Philadelphia zoning board was originally created by section 31 of the Philadelphia Zoning Ordinance of August 10, 1933, which was adopted pursuant to the Act of May 6, 1929, P. L. 1551, sec. 8, 53 PS §14759. The zoning board of adjustment was continued in its same form by chapter V, sec. 5-1006 of the Philadelphia Home Rule Charter, which was adopted on April 17, 1951, pursuant to the Act of April 21, 1949, P. L. 665, and pursuant to the General Code of Ordinances which became effective on February 29, 1956.

Section 8-407 of the Philadelphia Home Rule Charter empowered every board, including thereby the zoning board, ". . . to make such reasonable regulations as may be necessary and appropriate in the exercise of its powers and the performance of its duties under this charter or under any statute or

ordinance . . .": Section 1-102 (2) of the General Code of Ordinances. Rule 8 of the regulations and the other rules [1] were adopted by the board pursuant to this grant of authority. Plaintiff relies upon the provisions of the Act of May 26, 1929, which provided (section 8) : "Upon the hearing (before the board) any party may appear in person or by agent or by attorney." The Philadelphia Zoning Ordinance of 1933, sec. 31(8), contained a provision of similar import. Section 14-1802 (2) (*f*) of the Philadelphia code provides that: "Any party may appear in person, by his attorney, or by agent; except that for good and proper cause, the right of an agent to practice before the Board may be suspended by the Board. Statements by a person's attorney or agent on his behalf may be considered as testimony."

Defendants take the position that the pertinent portion of the Act of 1929 has been superseded by the Act of July 12, 1935, P. L. 708, sec. 1, 17 PS §1610, which deals with the unauthorized practice of law, and that a legislative body is without authority to confer on any individual the power to practice law. The Act of 1935 provides: "Any person who shall practice law, within this Commonwealth, without being a member of the Bar of a Court of Record, shall be guilty of a misdemeanor. . . ."[2]

---

[1] The regulations covered other matters than the right to practice before the board and were obviously aimed at obtaining more regular procedures before the board. We shall cause to be filed with the record a copy of the regulations which was appended by plaintiff to his brief in support of motion for summary judgment.

[2] See also Act of April 28, 1899, P. L. 117, sec. 1, as last amended by the Act of April 24, 1933, P. L. 66, sec. 1, 17 PS §1608. Admission to the bar is governed by Supreme Court Rules 6 to 17, and rule 12½ prohibits persons from practicing law who have not previously complied with these rules. In Hoopes v. Bradshaw, 231 Pa. 485, 487, it was held that the legislature can properly declare what effect is to be given to an act or decree of the judicial branch.

While it may be argued that the Act of 1929 and the Ordinance of 1933 have been superseded by rule 8 of the regulations or by the Act of July 12, 1935, we do not feel that either rule 8 or the Act of 1935 provides the real answer to the question presented, or that such a regulation can have the effect of superseding the provisions in the Act of 1929 or the code. Compare Ebald v. Philadelphia, 387 Pa. 407 (1956), affirming Ebald v. Philadelphia, 7 D. & C. 2d 179, and see also Fagan v. McNamee, 86 D. & C. 119, 124 (1958). We are of the opinion that a provision of the municipal code may not be negated or set aside or, indeed, avoided by a departmental adoption of a regulation unless such effect to a regulation is clearly contemplated in the code itself, or unless the power to regulate the subject matter was not finally vested in the city council. Therefore, unless there is some other basis on which we may disregard the authority of the Act of 1929 and section 14-1802(2) (f) of the code, rule 8 of the regulations must be regarded as invalid.

We are of the opinion that the Act of 1929 and section 14-1802(2) (f) of the code are both invalid to the extent that they purport to authorize a lay person to engage in the practice of law. We predicate our opinion on a broader base than the contention that the Act of 1935, being of Statewide application on a matter of Statewide concern, repeals the the authority granted in the Act of 1929 and prevents operation of section 14-1802(2) (f).

The power to admit persons to the bar and to define "the practice of law" is lodged in the judicial branch of government. A legislative body cannot usurp this power and in order for any act or ordinance to be constitutional it must be in aid of, and not derogation of, that power. In Hoopes v. Bradshaw, 231 Pa. 485, 487 (1911), Mr. Justice Brown stated:

"Nothing is clearer in the constitution than the separation of the legislative and judicial branches of our state government. Neither possesses the powers of the other, and any power inherent in the one cannot be exercised by the other. Judicial powers and functions are to be exercised by the judiciary alone, and a century ago in Commonwealth ex rel. Brackenridge v. Judges of Common Pleas, 1 S. & R. 187, it was held that the admission of an attorney to practice before a court is a judicial act."

Powers of regulation as to the qualifications and conduct of attorneys are vested in the judicial and not in the legislative branch: Petition of Joseph P. Splane, 123 Pa. 527 (1899). See In re Opinion of the Justices, 289 Mass. 607, 194 N. E. 313, 316-17 (1935). Thus, any attempt by the legislative branch to abridge or expand the right to practice law or to define it, if such definition operates to or purports to infringe upon the powers of the judiciary, would be invalid. Obviously, what the legislature cannot do, a political subdivision of the Commonwealth cannot do, nor could any administrative agency.

The case most closely analogous to the instant situation is Shortz v. Farrell, 327 Pa. 81 (1937). In that case the Workmen's Compensation Board permitted lay persons to prepare "pleadings," appear at hearings, conduct the "litigation" and, in general, to reppresent litigants before it. An injunction was sought, and the Supreme Court held that such representation constituted the practice of law and could be enjoined. In the Shortz case, the court stated, by way of footnote (page 84):

"We are not called upon in this case to determine whether the legislature has the power to permit laymen to practice law, or whether the grant of that right is exclusively a judicial prerogative."

Two years later the court *was* required to pass on the validity of a provision in The Workmen's Compensation Act which authorized a lay member of a labor union to represent a claimant in litigating his claim. At the argument before the Supreme Court, Attorney General Bard conceded that this provision was invalid. The court held that it was invalid under the decision in the Shortz case: Rich Hill Coal Company v. Bashore, 334 Pa. 449, 493 (1939).

In the Shortz case, the court relied upon a then recent opinion by the Supreme Court Illinois, People ex rel. Chicago Bar Association v. Goodman, 366 Ill. 346, 8 N. E. 2d 941, 111 A. L. R. 1 (1937). In the Chicago Bar Association case, the court considered language similar to that which appears in the Act of 1929 and the section of the code presently under consideration. The key word in that case and in the Act of 1929 and section 14-1802(2) (*f*) of the code is "agent." The Supreme Court of Illinois pertinently stated, page 352:

"It is urged that the practice by the respondent before the Industrial Commission is before an administrative body, and that the respondent, therefore, is not practicing law because he is not before a court. That precise question is one of first impression in this court. It is elementary that a great portion of the present day practice of law is conducted outside the courtroom. *The respondent urges that because the legislative act relating to the Industrial Commission grants to that body the right to promulgate rules governing the procedure before it, and the commission has adopted a rule permitting a party to appear before it by his attorney or 'agent', he, as agent of the claimant, may lawfully appear before the commission as the representative of the client and try his claim there.* Even though the Industrial Commission is

merely an administrative body, yet, if what the respondent did for a fee, in the presentation of and hearing of a petitioner's claim before that body, amounted to the practice of law, a rule of the commission purporting to grant him that privilege is of no avail to him. *The General Assembly has no authority to grant a layman the right to practice law.* (In re Day, [181 Ill. 73]) *It follows that any rule adopted by the commission, purporting to bestow such privilege upon one not a duly licensed attorney at law, is void. Nor can the General Assembly lawfully declare not to be the practice of law, those activities the performance of which the judicial department may determine is the practice of law.*" (Italics supplied)

We see no reason why the above forceful and very pertinent language does not apply to the instant case. The Illinois case and the Shortz case both dealt with workmen's compensation procedures, but that is not a distinction of significance or merit. We are aware of the fact that nonlawyers have appeared for many years before the zoning board, and we are mindful that plaintiff has for years earned his livelihood at such practice. We do not pretend to know precisely when it should have been recognized that the presentation of zoning problems involved the practice of law. It may well be, as the assistant city solicitor so well suggested in his oral argument, that what started out as a relatively informal forum imperceptibly evolved into a tribunal adjudicating very substantial rights and requiring skill, judgment and artistry. In Village of Euclid v. Ambler Realty Company, 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016, one of the earliest and most important constitutional zoning cases, the Supreme Court of the United States recognized the evolutionary aspect of

zoning problems. The court stated: "Until recent years, urban life was comparatively simple; but with the great increase of concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities": Page 386.

We have not found any authority in Pennsylvania or elsewhere which directly decides whether representation before a zoning board constitutes the practice of law. The current of all authority establishes that it is. In Blair v. Motor Carriers Service Bureau, Inc., 40 D. & C. 413 (1930), it was held that representation before the Public Utilities Commission constitutes the practice of law. See Kountz v. Rowlands, 46 D. & C. 461 (1942), holding that an appearance before the board of assessors on questions of tax assessments is the practice of law; In re Graham, 30 D. & C. 531 (1937), holding that the preparation of papers for letters testamentary and letters of administration is the practice of law; Walker v. Kahn, 31 D. & C. 620 (1938), holding that advice on the legal implications of filling out liquor applications and renewal forms is the practice of law. See also State Bar Assn. v. Connecticut Bank & Trust Co., 20 Conn. Sup. 248, 131 A. 2d 646, modified in 145 Conn. 222, 140 A. 2d 863 (1957, 1958).

In Shortz v. Farrell, supra, the Supreme Court carefully considered the subject of unauthorized practice before an administrative tribunal, and it defined the function of an attorney as follows, at page 84:

"1. He instructs and advises clients in regard to the law, so that they may properly pursue their affairs and be informed as to their rights and obligations.

"2. He prepares for clients documents requiring familiarity with legal principles beyond the ken of the ordinary layman,—for example, wills and such contracts as are not of a routine nature.

"3. He appears for clients before public tribunals to whom is committed the function of determining rights of life, liberty and property according to the law of the land, in order that he may assist the deciding official in the proper interpretation and enforcement of law. Since, in order to determine such rights, it is necessary first to establish the pertinent facts, which are frequently uncertain, controverted, and best ascertainable, as experience has demonstrated, by the application of rules of evidence tested by centuries of usage, a lawyer, being technically fitted for the purpose, examines and cross-examines witnesses, and presents arguments to jurymen to guide them to a proper determination of the facts. As ancillary to participation in trials and in legal argumentation, he prepares pleadings and other documents incidental to the proceedings.

"In considering the scope of the practice of law mere nomenclature is unimportant, as, for example, whether or not the tribunal is called a 'court' or the controversy 'litigation'. Where the application of legal knowledge and technique is required, the activity constitutes such practice even if conducted before a so-called administrative board or commission. It is the character of the act and not the place where it is performed which is the decisive factor."

In the Chicago Bar Association case, supra, the court states, page 350:

"In modern times the affairs of the people requiring the services of a lawyer have become more intricate and complex, demanding a corresponding increase in the standards of the profession through

preliminary education and a lengthened and more diversified course of study by those who would engage in the practice. Administrative law, although of comparatively recent growth, is recognized today as an important branch of the law. Classes for the study thereof are now taught in many of our leading law schools. Relatively speaking, not many years ago that part of a legal education was unknown to the curriculums of law colleges. In addition to the rigid educational requirements, the applicant must possess a good moral character. These prerequisites are not for the purpose of creating a monopoly in the legal profession nor for its protection, but are for the better security of the people against incompetency and dishonesty. People v. Alfani, 227 N. Y. 334, 125 N. E. 671; In re Opinion of the Justices, [289 Mass. 607], 194 N. E. 313" . . .

"One who, for a fee, contingent or otherwise, advises others as to their legal rights, the method to be pursued, the forum to be selected, and the practice to be followed for the enforcement of such rights, is engaged in the practice of law. In re Shoe Manf. Protective Ass'n. (Mass.) 3 N.E. (2d) 746: In re Maclub of America, 3 N.E. (2d) 272:" (p. 351) . . .

"The character of the act done, and not the place where it is committed, is the factor which is decisive of whether it constitutes the practice of law. Insofar as the opinion in the Beall case, [130 Ohio 427,200 N. E. 470], may appear to conflict with our views as here expressed, we decline to follow that case. We hold that the court has jurisdiction of the respondent and that the institution of proceedings before the Industrial Commission, and his trial of those causes before the arbitrator and the commission, constituted the practice of law": Page 357.

In Blair v. Motor Carriers Service, Inc., supra, 423-24, Judge Levinthal considered the nature of practice before the Public Utility Commission and stated:

"I am of the opinion that participation in proceedings and hearings before the Pennsylvania Public Utility Commission should be the exclusive prerogative of the duly-admitted lawyer. It is true that the Utility Commission is not a court of record but is an administrative agency of the legislature, with only quasi-judicial functions: Commonwealth ex rel. v. Benn, 284 Pa. 421 (1925); Metropolitan Edison Co. v. Public Service Comm. et al., 127 Pa. Superior Ct. 11 (1937); and that strict rules of evidence are not to be applied to hearings before the commission: Schuylkill Ry. Co. v. Public Service Comm. et al., 268 Pa. 430 (1920); Hoffman et al. v. Public Service Comm., 99 Pa. Superior Ct. 417 (1930). But it is well established that every order of the commission must be in conformity with law, and, among other things it must appear from the record that the order was supported by sufficient legal, competent evidence: Latrobe Water Co. v. Public Service Comm., 123 Pa. Superior Ct. 21 (1936); Cage et al v. Public Service Comm., 125 Pa. Superior Ct. 330 (1937); and that specific findings of fact are essential to the validity of the commission's orders: Klawansky v. Public Service Comm., 123 Pa. Superior Ct. 375 (1936); Erie Lighting Co. et al v. Pennsylvania Public Utility Comm., 131 Pa. Superior Ct. 190 (1938). I am satisfied that the lawyer's expert knowledge of the rules of evidence is needed to insure the proper administration of justice before the commission. The examination of witnesses and the preparation of a record for appeal can be conducted well only by men trained in the rules of evidence and able to find and construe the statutes and decisions relating to the questions at issue."

Most certainly the zoning board of adjustment is frequently required to pass upon questions of statutory construction, evidence, constitutionality and the applicability of case law and legal principles to facts presented. If, in the Blair case, questions of rates and routes were recognized as entailing the practice of law, such description applies with equal or greater vigor to such zoning problems as "abandonment", "accessory uses", "abuse of discretion", "certificates of adjustment", "classification", "conditions and provisos", "de novo hearing", "exceptions", "existing uses", "home occupations", "municipal exemptions", "proper party in interest", "non-conforming use", "unnecessary hardship", "vested right" and "due process of law."

In plaintiff's specific case, he sought to represent a party in a matter seeking a variance. The able assistant city solicitor in his supplemental brief stated as follows:

"In seeking the variance in question, the plaintiff would be required to know the doctrine of unnecessary hardship and what constitutes the public interest, which are the requisite elements for obtaining that type of dispensation. Kline Zoning Case, 395 Pa. 120, 122 (1959). It presupposes that he knows the difference between that which is a matter of right (the law of statutory construction), the law of non-conforming uses (which is a constitutional doctrine), as well as the difference between a variance, an exception and a certificate of adjustment (all of which involve different burdens of proof or burdens of going forward with the evidence). See, for example, Borden's Appeal, 369 Pa. 517, 519 (1952). It is respectfully submitted to the court that this involves such a myriad of functions as to be the sole domain of a lawyer. Not only is he required to know the law of zoning, but he must know when and how to object under the rules of evidence

and have a rather thorough knowledge of the constitution."

In Shortz v. Farrell, supra, at page 88, former Chief Justice Stern stated that whether practice before a tribunal constitutes practice of the law depends "largely in the frequency with which intricate legal problems arise in the performance of the duties imposed."

At almost every argument list of this court, appeals from the decisions of the zoning board involving "intricate legal problems" are argued. In every recent volume of Pennsylvania State Reports reference to the index will show cases where appeals from decisions of the zoning board, involving "intricate legal problems," are finally resolved. There is an abundant foundation which justifies our having taken judicial notice of the fact that "intricate legal problems" do arise frequently in cases coming before the zoning board.

There is no doubt that appearance before the zoning board entails the practice of law, but plaintiff persists in the contention that it has not yet been established that he proposed to engage in the practice of law in this case. As indicated above, we are of the opinion that any application for variance necessarily involves the practice of law. In any event, however, we are of the firm opinion that the board has made a *reasonable* regulation "necessary and appropriate in the exercise of its powers and the performance of its duties under this charter or under any statute or ordinance . . ." as authorized by section 8-407 of the charter. The board is bound under the law to refuse to permit anyone to engage in the unlawful practice of law before it. It would be an impossible burden and diversion of the board's energies to require it to make an independent determination in each case as to whether an "agent" was practicing law, or as to whether a case involved "much law" or "little law." Rule 8 represents a per-

missible determination by the board that its procedures so frequently and inextricably require the application of legal principles and techniques, that no "agent" should be permitted to appear before it without being qualified to practice law.

Finally, it is clear that the rule adopted is a proper protection of the public. One of the forerunners of rule 8 was an opinion by President Judge Milner of this court in DeSandro v. Zoning Board of Adjustment, C. P. 3, December term, 1958, no. 635, where it appeared that the applicant was improperly, inadequately and inappropriately represented by an "agent" who failed to comprehend rules of evidence, what was necessary to prove a variance, or the concept of nonconforming use. President Judge Milner stated:

"From our review of the record it would appear that Mr. Hunsberger is not an attorney; that as an 'agent' he was, in essence, practicing law before the board, though he stated he was a representative of the owner. We entertain grave doubt as to the propriety of such representation. Zoning matters frequently involve intricate questions of fact and law which justify and require their proper presentation by an attorney. The task of the court is made more difficult by the poor presentation of a case or an inadequate record. Such improper and inadequate presentation of an applicant's case too frequently results in a remand of these matters to the board, or requires a de novo hearing in court and constitutes a burden on the time of the court and the finances of the county. In the instant case we have not remanded this record for further testimony because we are satisfied that the owner of the property will not have lost any rights which he may actually have had as a result of this proceeding. We commend to the Board, the City Solicitor or other appropriate agency a consideration of rules governing practice before such quasi-judicial body as the Zoning Board of

Adjustment with a view to avoiding the situation referred to above."

The language of the DeSandro opinion is not to be taken as implying that the present plaintiff may not have acquired, through experience and native ability, an "expertese" in the field of zoning. Rule 8 may well work a hardship on him, and that is to be regretted. Similar hardship to individuals followed the opinion of the Supreme Court in Shortz v. Farrell. Some of the laymen who were then so affected subsequently were admitted to the bar and became outstanding practitioners.

But such limited "expertese" would clearly not qualify plaintiff to present cases before the courts nor can it avail him to practice law before the zoning board. Competence in the practice of the law reqiures many skills and in many interrelated fields. Experience in one limited field cannot be assumed to give the layman an adequate ability to represent other parties as the DeSandro case, inter alia, demonstrates.

Nor are laymen bound by any canon of ethics. There would be nothing to prevent laymen, were they permitted to practice before the zoning board, from going through lists of people whose applications have been rejected and soliciting their representation, nothing to prevent them from implying that what they were really selling was influence and not skill, nothing to prevent their advertising, nothing to enforce their fidelity to their client or good faith to the tribunal.

In the Blair case, supra, Judge Levinthal stated, page 420:

"The exclusive privilege to practice law is the lawyer's because his training is regulated, his intellectual and moral qualifications are investigated, and his responsibility can be readily enforced by the courts, whose officer he is. These important safeguards for

the protection of the public from unscrupulous and from ignorant lawyers would be futile if laymen might with impunity practice law. It is, therefore, not to protect the economic interests of the members of the bar, but rather to safeguard the rights of the general public that the practice of law is restricted to lawyers only."

In Walker v. Kahn, supra, Judge Ellenbogen stated, at page 622:

"Haphazard practice and half-baked interpretation of laws by those who have not seen fit to qualify themselves by special training is dangerous to the citizen. Such action jeopardizes the rights and the property of the trusting public. It may involve him in a great deal of litigation and much expense in trying to correct mistakes of self-appointed lawyers. The law of the land is not composed of a miscellaneous, disconnected heap of statutes. The law is a definitely correlated system of statutes and decisions, tied together and based upon a constitution, and the whole goes to make up what is known as the body of the law. . . .

"The lawyer is amenable to strict discipline. For bad faith, dishonesty, or negligence, he himself may be put on trial. He may be disbarred and his career blasted if he fails to observe the ethics of his profession. He may be called to account if he fails in his high duty to his client or violates his oath, which requires of him due thought in the matter of law and order. He is liable to his client if he negligently performs his duty. He is liable to the court if in the performance of those duties he disregards the due course of law and order.

"The man in business, although he may be of the highest character, is not under such constraint. If under conditions of competing business he should undertake to perform an extra service of a legal na-

ture for his customers, he is faced with no dire consequences for wrong advice."

In summary, these opinions hold that the representation of a party by one not trained in the law tends to deprive the public of the proper determination of substantial rights. The legal mind is trained to marshall evidence, present facts, and point out the legal implications which flow therefrom. In this respect, lawyers are an aid to the court or board of agency or officer before whom they appear. They materially lessen the burden of the tribunal and are, by oath, bound to aid in the speedy administration of justice.

We are of the opinion that the Uniform Declaratory Judgments Act of May 22, 1935, P. L. 228, sec. 7, 12 PS §853, authorizes this court to enter a declaratory judgment where, as here, it is appropriate and proper, regardless of how the action is commenced.

In our view, plaintiff's complaint is substantively and irretrievably defective. No purpose could be served by offering him an opportunity to amend. We, therefore, enter the following

## Order

And now, May 11, 1961, plaintiff's motion for summary judgment is overruled; defendants' preliminary objections to the complaint in mandamus are sustained and said complaint is hereby dismissed. It is further ordered, adjudged and declared that rule 8 of the regulations adopted by the Zoning Board of Adjustment of Philadelphia on October 25, 1960, is valid and enforcible, and that the Act of May 6, 1929, P. L. 1551, sec. 8, 53 PS §14759, and section 14-1802(2) (f) of the General Code of Ordinances of the City of Philadelphia are invalid, null and void to the extent, if any, that they purport to authorize any lay person to engage in the practice of law before the zoning board of adjustment.